**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.:**

JOSHUA HUGO RODRIGUEZ and KATHERINE HUERTA,

      Plaintiffs,

v.

TOWN OF MEDLEY, MAYKEL LEYVA, individually,
GERMAN GUTIERREZ, individually, FERNANDO PEREZ, individually,
MIAMI-DADE COUNTY, J.E. PEREZ, individually,
SANTIAGO CALLEJAS, individually, DANIEL DIAZ, individually,
JOSEPH D. MILLER, individually, JOHN DOE, individually,
JEANETTE SAID-JINETE, in her personal capacity and her official capacity as Chief of Police of
MEDLEY, DIEGO TORRES, individually, JULIO CHARDON, individually,
and JACK YOUNG, individually,

      Defendants.

_____/

## COMPLAINT

1)      This is a civil action seeking money damages in excess of $30,000 dollars, exclusive

of costs and interest against the TOWN OF MEDLEY, MAYKEL LEYVA, individually, GERMAN

GUTIERREZ, individually, FERNANDO PEREZ, individually, MIAMI-DADE COUNTY, J.E.

PEREZ, individually, SANTIAGO CALLEJAS, individually, DANIEL DIAZ, individually, JOSEPH

D. MILLER, individually, JOHN DOE, individually, JEANETTE SAID-JINETE, in her personal

capacity and her official capacity as Chief of Police of MEDLEY, and DIEGO TORRES,

individually. JULIO CHARDON, individually, and JACK YOUNG, individually,

-1-

2)     This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution. The United States District Court for the Southern District of Florida has jurisdiction of this action less than 42 U.S.C. § 1983, 28 U.S.C. §§ 1331 and 1343. PLAINTIFFS JOSHUA HUGO RODRIGUEZ and KATHERINE HUERTA further invoke the supplemental jurisdiction of the United States District Court to hear pendant state tort claims arising under state law, pursuant to 28 U.S.C. § 1367(a).

3)     The terms "false arrest," "illegal detention," "unlawful seizure," "false imprisonment," "unlawful restraint," and "illegal restraint" are used interchangeably throughout this pleading and it is intended they mean the same thing.


## PARTIES

4)     At all times material, PLAINTIFF JOSHUA HUGO RODRIGUEZ ["RODRIGUEZ"] was a resident of unincorporated Miami-Dade County, Florida, was the fiancé of KATHERINE HUERTA, and was *sui juris*.

5)     At all times material, PLAINTIFF KATHERINE HUERTA ["HUERTA"] was a resident of unincorporated Miami-Dade County, Florida, was *sui juris*, and was the fiancé of RODRIGUEZ.

6)     At all times material, the three children of RODRIGUEZ and HUERTA lived with them.

7)     At all times material, DEFENDANT TOWN OF MEDLEY ["MEDLEY" or "TOWN"] was a Florida municipal corporation, with its principal office and place of business in MEDLEY, Miami-Dade County, Florida, and was *sui juris*. At all times material the TOWN

COUNCIL ["COUNCIL"] was the governing body of the TOWN. At all times material, MEDLEY and the COUNCIL were acting under color of state law. The COUNCIL was a final policymaker of the TOWN.

8)     At all times material, DEFENDANT MIAMI-DADE COUNTY ["DADE" or "COUNTY"] was a Florida Chartered County with its principal office and place of business in Miami-Dade County, Florida and was *sui juris*. The Miami-Dade Police Department ("MDPD") is an agency of DEFENDANT DADE. All police officers of the MDPD are deputy sheriffs, agents, and employees of DADE. At all times material, DEFENDANT DADE and the MDPD were acting under color of state law.

9)     Unincorporated DADE are sections of DADE which are not part of a municipality, town, village, city, or other like entity.

10)     At all times material, DEFENDANT MAYKEL LEYVA ["LEYVA"] was over 18 years of age and was *sui juris*.

11)     At all times material, DEFENDANT LEYVA was an employee and agent as well as purportedly a police officer and law enforcement officer of MEDLEY and is being sued in his individual capacity. At all times material, DEFENDANT LEYVA was acting under color of state law.

12)     At all times material, DEFENDANT FERNANDO PEREZ [ "PEREZ"] was over 18 years of age and was *sui juris*.

13)     At all times material, DEFENDANT PEREZ was an employee and agent as well as purportedly a police officer and law enforcement officer of MEDLEY and is being sued in his individual capacity. At all times material, DEFENDANT PEREZ was acting under color of state law.

-3-

14)     At all times material, DEFENDANT GERMAN GUTIERREZ ["GUTIERREZ"] was over 18 years of age and was *sui juris*.

15)     At all times material, DEFENDANT GUTIERREZ was an employee and agent as well as purportedly a police officer and law enforcement officer of MEDLEY and is being sued in his individual capacity. At all times material, DEFENDANT GUTIERREZ was acting under color of state law.

16)     At all times material, LEYVA, PEREZ, and GUTIERREZ were designated as detectives by MEDLEY.

17)     At all times material, GUTIERREZ held the rank of sergeant. As sergeant, GUTIERREZ held supervisory authority over LEYVA, TORRES, and PEREZ. GUTIERREZ also had command responsibilities over LEYVA, TORRES, and PEREZ.

18)     At all times material, DEFENDANT J.E. PEREZ ["J.E. PEREZ"] was over 18 years of age and was *sui juris*.

19)     At all times material, J.E. PEREZ was a deputy sheriff, employee, agent and a law enforcement officer of DADE and is being sued in his individual capacity. At all times material, J.E. PEREZ was acting under color of state law.

20)     At all times material, DEFENDANT SANTIAGO CALLEJAS ["CALLEJAS"] was over 18 years of age and was *sui juris*.

21)     At all times material, CALLEJAS was a deputy sheriff, employee, agent and a law enforcement officer of DADE and is being sued in his individual capacity. At all times material, CALLEJAS was acting under color of state law.

-4-

22)     At all times material, DEFENDANT JOSEPH D. MILLER ["MILLER"] was over 18 years of age and was *sui juris*.

23)     At all times material, MILLER was a deputy sheriff, employee, agent and a law enforcement officer of DADE and is being sued in his individual capacity. At all times material, MILLER was acting under color of state law.

24)     At all times material, DEFENDANT DANIEL DIAZ ["DIAZ"] was over 18 years of age and was *sui juris*.

25)     At all times material, DIAZ was a deputy sheriff, employee, agent and a law enforcement officer of DADE and is being sued in his individual capacity. At all times material, DIAZ was acting under color of state law.

26)     At all times material, DEFENDANT JOHN DOE ["DOE"] was over 18 years of age and was *sui juris*.

27)     At all times material, DOE was a deputy sheriff, employee, agent and a law enforcement officer of DADE and is being sued in his individual capacity. DOE was the supervisor of DIAZ. As supervisor he had the power and authority to control the duties of DIAZ and direct DIAZ to go to locations and to perform acts as a law enforcement officer. At all times material, DOE was acting under color of state law.

28)     At all times material, DEFENDANT DIEGO TORRES ["TORRES"] was over 18 years of age and was *sui juris*.

29)     At all times material, DEFENDANT TORRES was an employee and agent as well as purportedly a police officer and law enforcement officer of MEDLEY and is being sued in his

individual capacity. At all times material, DEFENDANT TORRES was acting under color of state law.

30)     At all times material, DEFENDANT JACK YOUNG ["YOUNG"] was over 18 years of age and was *sui juris*.

31)     At all times material, DEFENDANT YOUNG was an employee and agent as well as a police officer and law enforcement officer of MEDLEY and is being sued in his individual capacity. At all times material, DEFENDANT YOUNG was acting under color of state law. At all times material, DEFENDANT YOUNG was a captain of the MEDLEY Police Department.

32)     At all times material, DEFENDANT JULIO CHARDON ["CHARDON"] was over 18 years of age and was *sui juris*.

33)     At all times material, DEFENDANT CHARDON was an employee and agent as well as  a police officer and law enforcement officer of MEDLEY and is being sued in his individual capacity. At all times material, DEFENDANT CHARDON was acting under color of state law. At all times material, DEFENDANT CHARDON was a lieutenant of the MEDLEY Police Department.

34)     At all times material, the Chief ["CHIEF"] of the Police Department of TOWN ["DEPARTMENT"] was a final policymaker for the TOWN and its DEPARTMENT. The CHIEF established, among other things, all standard operating procedures also known as policies, controlled all assignment of employees of the police department to duties and responsibilities, and had the sole power to recommend to the TOWN Council who could be designated, appointed and employed as a member of the DEPARTMENT, controlled all discipline of the employees of the DEPARTMENT. At all times material, CHIEF means the person who held the office of Chief of Police of TOWN. At all times material the CHIEF was acting under color of state law.

35) At all times material, DEFENDANT JEANETTE SAID-JINETE ["SAID-JINETE"] was an employee and agent as well as purportedly a police officer and law enforcement officer of MEDLEY and is being sued in her personal and official capacities. DEFENDANT SAID-JINETE was designated the CHIEF on February 17, 2011, and remains in that position. At all times material, DEFENDANT SAID-JINETE was acting under color of state law and she was the successor-in-interest of all CHIEFS of Police who preceded her.

## PRESUIT REQUIREMENTS SATISFIED

36) All conditions precedent to the filing of this lawsuit have been fulfilled pursuant to Florida Statutes §768.28.

37) PLAINTIFFS presented their claims in writing to MEDLEY and DADE by means of letters of demand for damages within three (3) years of the accrual of cause of action.

38) DEFENDANTS MEDLEY and DADE never made final dispositions of the written claims of PLAINTIFFS within six (6) months of their presentation.

## **FACTS**

39)    All matters and incidents occurred within the Southern District of Florida.

40)    At all times material, the following ordinances existed in the TOWN and they were

in full force and effect.

Sec. 35-47. - Personnel appointments.

The Chief of Police shall have the power of designating, appointing and employing such members of the Police Department with such rank as in the opinion of the Chief of Police shall be necessary; provided, however, that all appointments made by the Chief of Police shall be approved by resolution of the TOWN Council prior to the appointments made by the Chief of Police of any officer or employee of the Police Department and shall be at the will and pleasure of the TOWN Council, and that the termination of any employment of any police officer as herein provided may be made with or without cause, and no employee of the Police Department shall be entitled to a hearing.

Sec. 35-51. - Selection of officers.

The Chief of Police shall have the right to select such officers as he shall deem fit for employment and prior to the employment of such officers the Chief of Police shall submit their names and qualifications to the TOWN Council and no police officer serving under the Chief of Police shall be employed until the Council shall have first ratified and approved the employment and compensation of such officer upon the affirmative vote of at least three Councilmembers.

41)    On or about June 1, 2009, at the scheduled meeting of the TOWN Council, the then

CHIEF presented GUTIERREZ to the TOWN Council as a prospective employee of the TOWN as

a police officer. Despite the requirement of the ordinance that the then CHIEF submit the

qualifications of GUTIERREZ to the TOWN Council prior to his employment, the CHIEF never

submitted the qualifications at any time.

42)     At no time did the TOWN Council ratify and approve the employment, appointment, and compensation of GUTIERREZ as a police officer upon the affirmative vote of at least three Council members. In fact, no vote of any Council member occurred.

43)     Instead, upon presentation of GUTIERREZ by the then CHIEF to the Council as recommended to be hired as a police officer, GUTIERREZ was immediately sworn in as a police officer by the City Clerk. Because the proper procedures did not occur with regard to hiring GUTIERREZ as a police officer, GUTIERREZ was not a law enforcement officer as a matter of fact and law.

44)     On or about May 6, 2013, at the scheduled meeting of the TOWN Council, the then CHIEF presented LEYVA to the TOWN Council as a prospective employee of the TOWN as a police officer. Despite the requirement of the ordinance that the then CHIEF submit the qualifications of LEYVA to the TOWN Council prior to his employment, the then CHIEF never submitted the qualifications at any time.

45)     At no time did the TOWN Council ratify and approve the employment, appointment, and compensation of LEYVA as a police officer upon the affirmative vote of at least three Council members. In fact, no vote of any Council member occurred.

46)     Instead, upon presentation of LEYVA by the then CHIEF to the Council as recommended to be hired as a police officer, LEYVA was immediately sworn in as a police officer by the City Clerk. Because the proper procedures did not occur with regard to hiring LEYVA as a police officer, LEYVA was not a law enforcement officer as a matter of fact and law.

47)     On or about June 7, 2010, at the scheduled meeting of the TOWN Council, the then CHIEF presented PEREZ to the TOWN Council as a prospective employee of the TOWN as a police

officer. Despite the requirement of the ordinance that the then CHIEF submit the qualifications of PEREZ to the TOWN Council prior to employment, the then CHIEF never submitted the qualifications at any time.

48)     At no time did the TOWN Council ratify and approve the employment, appointment, and compensation of PEREZ as a police officer upon the affirmative vote of at least three Council members. In fact, no vote of any Council member occurred.

49)     Instead, upon presentation of PEREZ by the then CHIEF to the Council as recommended to be hired as a police officer, PEREZ was immediately sworn in as a police office by the City Clerk. Because the proper procedures did not occur with regard to hiring PEREZ as a police officer, PEREZ was not a law enforcement officer as a matter of fact and law.

50)     On or about April 6, 2009, at the scheduled meeting of the TOWN Council, the then CHIEF presented TORRES to the TOWN Council as a prospective employee of the TOWN as a police officer. Despite the requirement of the ordinance that the then CHIEF submit the qualifications of TORRES to the TOWN Council prior to employment, the then CHIEF never submitted the qualifications at any time.

51)     At no time did the TOWN Council ratify and approve the employment, appointment, and compensation of TORRES as a police officer upon the affirmative vote of at least three Council members. In fact, no vote of any Council member occurred.

52)     Instead, upon presentation of TORRES by the then CHIEF to the Council as recommended to be hired as a police officer, LEYVA was immediately sworn in as a police office by the City Clerk. Because the proper procedures did not occur with regard to hiring TORRES as a police officer, TORRES was not a law enforcement officer as a matter of fact and law.

53)     The Town Council abdicated its responsibility to examine the qualifications of GUTIERREZ, LEYVA, PEREZ and TORRES and other officer nominees/candidates and to determine whether GUTIERREZ LEYVA, PEREZ and TORRES and other officer nominees/candidates were fit candidates for employment as police officers.

54)     Notwithstanding that GUTIERREZ was not legally a law enforcement officer, the then CHIEF designated, appointed, and employed GUTIERREZ as a sergeant. GUTIERREZ was not a sergeant as a matter of law because the then CHIEF and TOWN failed to comply with the requirements of section 35-47 of the ordinances of the TOWN including the failure of the TOWN to pass a resolution authorizing such action of the then CHIEF.

55)     The Town Council abdicated its responsibility to examine the qualifications of GUTIERREZ and other officer nominees/candidates for promotion and to determine whether GUTIERREZ and other officer nominees/candidates were fit candidates for promotion.

56)     At all times material, GUTIERREZ was given the rank of sergeant. As such, GUTIERREZ was a supervisor of LEYVA, PEREZ, and TORRES. GUTIERREZ had command responsibilities over them.

57)     At no time on and before September 16, 2019, including at the time of hiring of Gutierrez as a MEDLEY police officer, did the then CHIEF, any official of the DEPARTMENT, any employee of the TOWN, or anyone notify the Town Council of the following:

a)      GUTIERREZ had been an officer with the Hialeah Police Department. He was reprimanded for excessive use of sick leave in conjunction with days off;

b)      GUTIERREZ had previously been employed by the City of Miami Beach as a police officer; and

-11-

A)      Miami Beach fired him in 2006 for misconduct involving excessive force where he stuck an arrestee in the face multiple times with his handcuffs; he failed to disclose and properly document the details of the incident; and falsified and omitted relevant information from official documents.

B)      GUTIERREZ became a Miami Beach police officer in April 2001 and was suspended in November 2004 when the investigation commenced until his firing in 2006, he was only active as a Miami Beach police officer for 3½ years;

C)      GUTIERREZ showed indications of deception concerning illegal drug use as a police officer and use of excessive force in his pre-employment voice stress analysis test;

D)      While employed by Miami Beach, GUTIERREZ was the subject of 22 internal affairs complaints;

E)      GUTIERREZ was hired by Miami Beach by the Chief over the objections of the hiring committee;

F)      GUTIERREZ was in significant debt for which he had filed for bankruptcy. GUTIERREZ had 38 credit accounts in serious delinquency and 18 other credit accounts in delinquency for a total of 56 accounts at the time Miami Beach hired him;

G)      As a result of his pre-employment psychological examination, the psychologist expressed serious concerns about his financial issues.

The psychologist expressed that the financial issues evinced a lack of judgment and that GUTIERREZ purposely incurred his debts with the intention of declaring bankruptcy;

H)      GUTIERREZ used an excessive number of sick days as he did when he was a Hialeah Police officer;

I)      GUTIERREZ was reprimanded numerous times for missing court hearings and depositions, and other related matters.

c)      The purported results/reports of the MEDLEY pre-employment psychological and polygraph examinations of GUTIERREZ are not in his employment file, although the pre-employment investigation report claimed GUTIERREZ passed both examinations;

d)      At the time of his application to MEDLEY, GUTIERREZ was employed as a Virginia Gardens police officer; and

A)      The pre-employment investigation conducted by the Virginia Gardens background investigator was substandard and flawed and makes suspect any recommendation from the chief of police of the Virginia Gardens Police Department who hired GUTIERREZ utilizing the pre-employment investigation report. Consequently, any recommendation from the Virginia Gardens chief and the investigator was suspect. The recommendations from Virginia Gardens were made by the chief and the investigator;

B)      The investigator ignored the concerns of the pre-eminent polygrapher who conducted the polygraph examination of GUTIERREZ. Instead, the

investigator substituted his own judgment claiming he had more ability than the pre-eminent polygrapher in the state of Florida because the investigator conducted polygraphs for 20 years, Thus, the investigator negated any reason to ever have an independent polygraph examination as he could always overrule them;

C)      The investigator dispensed with consideration of the firing of GUTIERREZ by the Miami Beach Police Department by relying on an anonymous source who worked in the Miami Beach Police Internal Affairs Unit. The source purportedly said that GUTIERREZ was fired because "he got mixed up in a multi-jurisdictional and very high politics." It should have been obvious to the Medley investigator that the Virginia Gardens investigator could not be relied upon because anyone who actually read the Miami Beach internal affairs report, even perfunctorily, would know that there was not anything about the Miami Beach matter even remotely resembling an issue concerning something multi-jurisdictional and very high politics. Moreover, an anonymous source should not have been relied upon in a background investigation. The Medley investigator had the entire Miami Beach report and it is in the personnel file of Gutierrez; and

D)      The Virginia Gardens investigator wrote in the pre-employment investigation report that the psychologist stated that GUTIERREZ did "extremely well." That is untrue. There is nothing in the report that states anything of the kind. A reading of the report establishes that the psychologist

-14-

was not informed by Virginia Gardens and GUTIERREZ, either by commission or omission, of the Miami Beach firing and the events surrounding it. Thus, the psychologist was unable to consider that information event in reaching his evaluation of GUTIERREZ.

58)     At all times from before the hiring of GUTIERREZ   through September 19, 2019, all this information was known by or should have been known by the various CHIEFs of Police of the TOWN including SAID-JINETE.

59)     On or about January 16, 2019, PLAINTIFFS and their children resided at 1305 SW 93rd Place, Miami, unincorporated Miami-Dade County, Florida 33174 ("PROPERTY").

60)     There was a single family residence on the PROPERTY. The residence and its curtilage were completely surrounded by walls, bushes, and fences and a wrought iron double gate. The residence had a covered porch. On the porch was the front entry door to the residence. That door opened outward. The mailbox for the residence was located outside the completely surrounded residence and curtilage.

61)     The residence and PROPERTY were located outside the jurisdictional limits of the TOWN in an area called unincorporated MIAMI-DADE. As such, all police officers of the TOWN had no authority to act as law enforcement officers at the PROPERTY and all locations outside the jurisdictional limits of the TOWN including unincorporated DADE.

62)      All police officers of the TOWN knew or should have known that they had no authority to act as law enforcement officers outside the jurisdictional limits of the TOWN including unincorporated DADE which included the PROPERTY.

63)     Because LEYVA, GUTIERREZ, PEREZ and TORRES were not properly and legally hired by the TOWN pursuant to the ordinances of the TOWN, they never had authority to act as law enforcement and police officers of the TOWN at any location, both inside and outside the TOWN.

64)     At all times material, notwithstanding that GUTIERREZ, LEYVA, PEREZ, and TORRES were not legally law enforcement officers, GUTIERREZ, LEYVA, and PEREZ were assigned to the detective bureau of the police DEPARTMENT of the TOWN.

65)     On or about December 11, 2018, an investigation was commenced by the MEDLEY Police Department into an allegation of grand theft from a business located within the TOWN and its jurisdiction that occurred on or about November 27, 2018.

66)     PEREZ was designated as the detective in charge of the investigation.

67)     On or about January 15, 2019, at about 10:00 p.m., PEREZ believed he had developed probable cause to arrest RODRIGUEZ for the alleged grand theft.

68)     Despite PEREZ's belief, there was no probable cause to arrest RODRIGUEZ.

69)     On January 15, 2019, at or about 10:00 p.m., PEREZ telephoned RODRIGUEZ. PEREZ introduced himself. A conversation ensued between PEREZ and RODRIGUEZ.

70)     The substance of the conversation was that PEREZ told RODRIGUEZ that he needed to go to the TOWN police station the next day.

71)     RODRIGUEZ was at the hospital with his daughter. RODRIGUEZ responded he could not go to the police station.

72)     PEREZ told RODRIGUEZ that he did not care about the interviews and that he was going to come see RODRIGUEZ.

-16-

73)     Following the conversation, PEREZ communicated with his superior/supervisor GUTIERREZ about his interaction with RODRIGUEZ and his belief that probable cause existed for the arrest of RODRIGUEZ for the theft of the computer.

74)     GUTIERREZ decided that he, PEREZ and LEYVA would go to the residence the following morning at or about 6:00 a.m. so they could confront RODRIGUEZ.

75)     The purpose of the decision to go to the residence was to arrest RODRIGUEZ and perhaps, among other actions, to continue the investigation by interrogating RODRIGUEZ.

76)     It was the operational plan to go to the residence to encounter RODRIGUEZ and invite him to travel with them to the TOWN police department to interrogate him.

77)     In the event that RODRIGUEZ refused to travel with them to the Medley Police Department, they intended to arrest RODRIGUEZ and bring him to the DEPARTMENT where he would be interrogated.

78)     On or about April 21, 2015, MEDLEY and MIAMI-DADE COUNTY entered into a Mutual Aid Agreement. Among other provisions, the Mutual Aid Agreement ["MAA"] granted police officers of MEDLEY the authority to act as law enforcement officers in unincorporated MIAMI-DADE COUNTY provided certain prerequisites and protocols occurred and certain procedures were followed. The MAA remains in effect as of the filing of this complaint.

79)     At all times material, the MEDLEY Police Department had a policy and procedures manual for the operation of the police department, and its employees.

80)     At all times material, every police officer of MEDLEY was directed to know the policies and procedures and comply with the policies and procedures of Medley police. However, MEDLEY knew that all its officers did not so do, but MEDLEY took no action to ensure that its

officers read, reviewed and understood all the policies, especially new ones, and the MAA, nor conducted any verification that its officers did so.

81)     At all times material, Policy 347 of the MEDLEY Police Department existed which incorporated all provisions of the MAA.

82)     At all times material, MDPD had a policy and procedure manual for the operation of the MDPD.

83)     At all times material, every police officer of MDPD was directed to know the policy and procedures and comply with the policies and procedures of the MDPD. However, MDPD knew that all its officers did not so do, but MDPD took no action to ensure that its officers read, reviewed and understood all the policies, especially new ones, and the MAA, nor conducted any verification that its officers did so.

84)     At all times material, a Standard Operating Procedure /SOP of the MDPD existed which incorporated all provisions of the MAA.

85)     Sections 23.12 - 23.127, Florida Statutes, provided the legal authority for mutual aid agreements.

86)     LEYVA, PEREZ, TORRES, GUTIERREZ, and all MEDLEY police officers never received any training from the TOWN regarding how to activate the MAA, the scope and authority to exercise police powers outside the jurisdiction of the TOWN pursuant to the MAA and Policy 347, including making arrests, conducting searches, and entering private property.

87)     LEYVA, PEREZ, TORRES, GUTIERREZ, and all MEDLEY police officers were told incorrectly by MEDLEY that the MAA and Policy 347 granted them carte blanche authority to exercise police powers outside the jurisdiction of the TOWN in unincorporated DADE including

making arrests, conducting searches, and entering private property. No one including the TOWN ever informed or instructed them and all MEDLEY police officers, that the MAA and Policy Statement 347 required that certain actions, protocols, or prerequisites must occur before the MAA granted them authority to act as law enforcement officers outside the TOWN.

88)     DIAZ, DOE, J.E. PEREZ, MILLER, CALLEJAS and all MDPD officers never received any training from the MDPD regarding how the MAA was activated, the scope and authority of MEDLEY police officers to exercise police powers in unincorporated DADE outside the jurisdiction of MEDLEY pursuant to the MAA and its SOPs, including making arrests, conducting searches, and entering private property.

89)     DOE, J.E. PEREZ, MILLER, CALLEJAS, DIAZ, and all MDPD officers were told incorrectly by MDPD that the MAA and its SOPs granted MEDLEY and its police officers carte blanche authority to exercise police powers outside the jurisdiction of MEDLEY, in unincorporated DADE, including making arrests and conducting searches. No one including the MDPD ever informed or instructed DOE, J.E. PEREZ, MILLER, CALLEJAS, DIAZ and all MDPD law enforcement officers, that the MAA and SOPs required that certain actions, protocols, or prerequisites must occur before the MAA granted municipal police officers authority to act as law enforcement officers outside their municipality.

90)     At all times material, GUTIERREZ, LEYVA, and PEREZ did not have a search warrant or arrest warrant. Nonetheless, they believed they could enter RODRIGUEZ's PROPERTY and residence located in unincorporated DADE and outside the jurisdiction of the TOWN without search and arrest warrants and arrest RODRIGUEZ for grand theft because of the MAA and Policy 347, even without obtaining consent from RODRIGUEZ and HUERTA to enter the PROPERTY.

91)     Regardless of any authority granted by the MAA and Policy 347 to MEDLEY and its officers, LEYVA, PEREZ, TORRES, and GUTIERREZ could not exercise any law enforcement/police power anywhere, including within the TOWN, because they were never legally hired as police officers by the TOWN.

92)     At all times material, in order for MEDLEY and its law enforcement officers to legally utilize the MAA, the following was mandatory.

a)      An authorized representative of the MEDLEY Police Department was required to notify the MDPD that assistance was requested in advance of any action taken by MEDLEY police officers;

b)      The Director of the MDPD or his designee was required to approve the mutual aid requested by the MEDLEY police.

c)      In MEDLEY's request for mutual aid, MEDLEY was required to include specific reporting instructions for MDPD personnel who would be rendering mutual aid;

d)      In the request for mutual aid, MEDLEY was required to include communication instructions with the MDPD in order for the Communications Bureau of the MDPD to maintain radio contact with the MEDLEY Police Department until the mutual aid situation was ended;

e)      MEDLEY law enforcement/police officers were prohibited from making a nonconsensual or forcible entry into private dwellings, residences, living spaces and business spaces which were not open to the public absent a search warrant. Authority was only allowed to be exercised only in places open to the public or private places

into which the arresting officer entered with the consent of an occupant entitled to give consent.

f)    A MEDLEY law enforcement/police officer was only allowed to exercise authority granted under the MAA in places open to the public or private places into which the MEDLEY law enforcement/police officer entered with the consent of an occupant entitled to give consent;

g)    Prior to taking enforcement action, a MEDLEY officer was required to notify the designated MDPD officer.

h)    Concurrent law enforcement jurisdiction pursuant to the MAA was precluded for preplanned operations;

i)    The MDPD was required to take custody of any arrestee; and

j)    Reports of the actions of the MEDLEY police officers taken pursuant to the MAA were required to be faxed to the head of the MDPD.

93)    At all times material, Policy 347 incorporated the mandatory provisions of the MAA.

94)    None of the protocols, prerequisites and requirements to utilize the MAA and Policy 347 as well as the subsequent requirements in order to utilize the MAA and Policy 347 were completed by MEDLEY, LEYVA, PEREZ, TORRES, and GUTIERREZ, and all police officers of MEDLEY. Because none of the protocols, prerequisites and requirements occurred, no MEDLEY police officer including LEYVA, PEREZ, TORRES, and GUTIERREZ had any legal authority to act as a police officer in unincorporated DADE.

95)    At approximately 6:00 a.m. on January 16, 2019, LEYVA, PEREZ and GUTIERREZ went to the PROPERTY. Upon arrival at the PROPERTY, the double gate was closed and secured

closed and held together by a chain which had been wrapped around each gate. The double gate was closed and secured the evening before by RODRIGUEZ as he did each and every night.

96)     At all times material, RODRIGUEZ and HUERTA had expectations of privacy in the PROPERTY, curtilage, and residence.

97)     LEYVA, PEREZ, and GUTIERREZ removed the chain securing the double gate without the consent or permission of RODRIGUEZ and HUERTA.

98)     Upon the removal of the chain and the opening of the double gate, LEYVA, PEREZ, and GUTIERREZ entered onto the PROPERTY without the consent or permission of RODRIGUEZ and HUERTA or anyone authorized to grant consent or permission.

99)     At all times after entry onto the PROPERTY, LEYVA, PEREZ, and GUTIERREZ entered and remained on the PROPERTY without the consent or permission of RODRIGUEZ and HUERTA or anyone authorized to grant consent or permission

.     100)     LEYVA, PEREZ, and GUTIERREZ went to the front door where PEREZ knocked on the front door.

101)     Shortly thereafter RODRIGUEZ opened the front door and remained inside the residence.

102)     LEYVA, PEREZ, and GUTIERREZ knew or should have known that without a search warrant and arrest warrant they did not have legal authorization and authority to enter the private areas of the PROPERTY and residence including the curtilage surrounded by the barriers and the closed gate without permission of the occupants of the residence including specifically RODRIGUEZ and HUERTA.

103)     LEYVA, PEREZ, and GUTIERREZ knew or should have known that pursuant to the MAA, they were prohibited from making a nonconsensual or forcible entry onto and into the private dwelling, residence, living space, and curtilage of RODRIGUEZ and HUERTA absent a search warrant or arrest warrant. Authority to act pursuant to the MAA and Policy 347 was only allowed to be exercised in places open to the public or private places into which the arresting officer entered with the consent of an occupant entitled to give consent.

104)     LEYVA, PEREZ, TORRES, and GUTIERREZ knew or should have known that the authority to act as law enforcement officers in unincorporated DADE was never available to them because concurrent law enforcement jurisdiction pursuant to the MAA was precluded for preplanned operations.

105)     LEYVA, PEREZ, TORRES, and GUTIERREZ knew or should have known that they did not possess police and law enforcement powers outside the jurisdiction of MEDLEY.

106)     LEYVA, PEREZ, TORRES, and GUTIERREZ knew or should have known they did not have law enforcement/police powers at the PROPERTY pursuant to the MAA and Policy 347 because they failed to comply with the protocols, prerequisites and requirements of the MAA and Policy 347.

107)     LEYVA, PEREZ, TORRES, and GUTIERREZ knew or should have known they did not have law enforcement/police powers because they were never properly hired as police officers by MEDLEY.

108)     RODRIGUEZ questioned why LEYVA, PEREZ, and GUTIERREZ were at his door at that time and stated he was not going to jail.

109)    Immediately, PEREZ told RODRIGUEZ he was under arrest. PEREZ reached inside the residence and grabbed the wrist of RODRIGUEZ in an attempt to take RODRIGUEZ into custody.

110)    LEYVA, PEREZ and GUTIERREZ did not have permission nor consent to touch RODRIGUEZ.

111)    LEYVA, PEREZ and GUTIERREZ did not have permission nor consent to enter the PROPERTY and into the residence.

112)    While remaining within the residence RODRIGUEZ acted in a manner which prevented PEREZ from grabbing him.

113)    RODRIGUEZ moved away from the doorway and further into the house.

114)    As RODRIGUEZ moved away from the doorway and further into the house LEYVA, PEREZ, and GUTIERREZ entered the house and pursued him.

115)    During this period LEYVA, PEREZ and GUTIERREZ pummeled RODRIGUEZ and continuously struck RODRIGUEZ.

116)    LEYVA, PEREZ and GUTIERREZ struck and battered RODRIGUEZ continuously with extreme and excessive force.

117)    During the course of these events GUTIERREZ placed RODRIGUEZ into a choke hold to such force and effect that it caused RODRIGUEZ to exclaim multiple times **"I CAN'T BREATHE."** The choke hold caused RODRIGUEZ extreme pain.

118)    LEYVA, PEREZ and GUTIERREZ forced RODRIGUEZ to the floor. While RODRIGUEZ was on the floor, GUTIERREZ **placed his knee on the neck of RODRIGUEZ** causing great pain to RODRIGUEZ and physical injuries.

119)     As a result of all the pummeling, battering, striking, choke hold and use of excessive force delivered to him, RODRIGUEZ suffered great pain and suffering to the extent that he believed his ribs were broken as well as other severe injuries and he continued to suffer that great pain and suffering afterward.

120)     In the course of these events within the residence, but after they had entered and used physical force on RODRIGUEZ, LEYVA, PEREZ and GUTIERREZ contacted MDPD and requested emergency assistance. As a result, MDPD dispatched two officers, J.E. PEREZ and CALLEJAS.

121)     Pursuant to the dispatch, MDPD officers J.E. PEREZ and CALLEJAS went to the PROPERTY and residence.

122)     As a result of the actions of LEYVA, PEREZ and GUTIERREZ, J.E. PEREZ and CALLEJAS entered the PROPERTY and residence without legal authority and permission.

123)     J.E. PEREZ and CALLEJAS entered the PROPERTY and residence without the consent of RODRIGUEZ, HUERTA and anyone authorized to grant permission for them to enter the PROPERTY and residence.

124)     J.E. PEREZ and CALLEJAS assisted in the handcuffing and detention of RODRIGUEZ without determining the legal authority of LEYVA, PEREZ and GUTIERREZ to act as law enforcement officers outside the jurisdiction of MEDLEY and within unincorporated DADE. RODRIGUEZ remained in handcuffs until he was later delivered to the DADE jail.

125)     At no time did J.E. PEREZ and CALLEJAS endeavor to determine whether LEYVA, PEREZ and GUTIERREZ as MEDLEY police officers had the lawful authority to act as law enforcement officers or were law enforcement officers at the PROPERTY and residence.

126)    At all times material, LEYVA, PEREZ and GUTIERREZ as MEDLEY police officers had no authority to act as law enforcement officers or were law enforcement officers at the PROPERTY, residence, unincorporated DADE as well as all locations outside of MEDLEY.

.    127)    Nonetheless, J.E. PEREZ and CALLEJAS improperly and illegally allowed LEYVA, PEREZ and GUTIERREZ to exercise law enforcement powers, illegally imprison and seize RODRIGUEZ, illegally trespass on the PROPERTY and residence, and illegally touch and strike RODRIGUEZ.

128)    Nonetheless, J.E. PEREZ and CALLEJAS also unlawfully seized RODRIGUEZ for the offenses of batteries on a law enforcement officer and resisting officers with violence despite LEYVA, PEREZ and GUTIERREZ not having any authority to act as law enforcement officers.

129)    J.E. PEREZ and CALLEJAS with the assistance of LEYVA, PEREZ and GUTIERREZ removed RODRIGUEZ to the street outside of the PROPERTY and residence which was in unincorporated DADE and outside the jurisdiction of MEDLEY.

130)    J.E. PEREZ and CALLEJAS tendered custody of RODRIGUEZ to MILLER. At no time did MILLER endeavor to determine whether LEYVA, PEREZ and GUTIERREZ as MEDLEY police officers had the lawful authority to act as law enforcement officers or were law enforcement officers at the PROPERTY and residence.

131)    In taking custody of RODRIGUEZ, MILLER also unlawfully seized RODRIGUEZ for the offenses of batteries on a law enforcement officer and resisting officers with violence despite LEYVA, PEREZ and GUTIERREZ not having any authority to act law enforcement officers.

132)    MILLER seized, maintained custody and control of RODRIGUEZ when RODRIGUEZ was removed from the PROPERTY and residence into the public area of

unincorporated DADE and outside the jurisdiction of MEDLEY while RODRIGUEZ was awaiting treatment by Fire Rescue and other medical treatment before he could be allowed to enter the jail. MILLER also seized, maintained custody and control of RODRIGUEZ while he was treated by Fire Rescue.

133)    In addition, no MEDLEY police officer or purported police officer had the authority to arrest or seize RODRIGUEZ for any crime including grand theft outside of MEDLEY.

134)    Contrary to the MAA, MILLER notified GUTIERREZ that MEDLEY was required to take custody of RODRIGUEZ

135 )   After the treatment was completed, MILLER illegally tendered custody of RODRIGUEZ to MEDLEY including TORRES and GUTIERREZ.

136)    At no time did MILLER determine whether TORRES and GUTIERREZ as MEDLEY police officers had the lawful authority to take custody of RODRIGUEZ in unincorporated DADE outside of the TOWN without first determining the legal authority of TORRES, LEYVA, PEREZ, and GUTIERREZ to act as police officers outside the jurisdiction of MEDLEY in unincorporated DADE.

137)    Nonetheless, MILLER improperly and illegally allowed TORRES and GUTIERREZ to exercise law enforcement powers, illegally imprison RODRIGUEZ, illegally trespass on the PROPERTY and residence, and illegally touch and strike RODRIGUEZ.

138)    HUERTA witnessed the actions by LEYVA, PEREZ, and GUTIERREZ within the residence. HUERTA video recorded events which occurred within the residence.

139)     GUTIERREZ threatened to arrest HUERTA for obstruction if she continued to video record in her own residence. As a result, HUERTA ceased video recording out of fear of retaliation from GUTIERREZ.

140)     While in the residence, it was stated categorically by at least one of the MEDLEY detectives that they did not need a warrant to enter the PROPERTY and residence and to arrest RODRIGUEZ.

141)     Despite having no legal authority, TORRES, at the direction of GUTIERREZ, illegally took custody of RODRIGUEZ in unincorporated DADE and transported RODRIGUEZ to MEDLEY.

142)     TORRES, J.E. PEREZ, MILLER, and CALLEJAS did not have permission nor consent to touch RODRIGUEZ.

143)     DOE directed DIAZ to go to MEDLEY to complete a sworn probable cause affidavit charging RODRIGUEZ with three counts of battery of a law enforcement on LEYVA, PEREZ and GUTIERREZ, respectively, and three counts of resisting a law enforcement officer with violence for LEYVA, PEREZ and GUTIERREZ, respectively.

144)     DOE also directed DIAZ to arrest RODRIGUEZ for the charges set forth in the sworn probable cause affidavit. Accordingly, RODRIGUEZ was arrested by DIAZ. At all times, DIAZ and DOE knew that the State Attorney would utilize the sworn probable cause affidavit in making its decision as to the filing of formal charges in the Information.

145)     Neither DOE nor DIAZ conducted any inquiry or investigation to determine whether LEYVA, PEREZ, TORRES, and GUTIERREZ were legally authorized to exercise law enforcement powers, outside of the TOWN within unincorporated DADE.

146)     As a result of the failure of DOE and DIAZ to conduct any such inquiry or investigation, DIAZ produced the sworn probable cause affidavit which caused RODRIGUEZ to be illegally imprisoned in the DADE jail, illegally arrested for three counts of battery of a law enforcement and three counts of resisting a law enforcement officer with violence.

147)     DIAZ produced the sworn probable cause affidavit as a result of the information dictated and provided to him by LEYVA, PEREZ and GUTIERREZ at the MEDLEY Police Station. Upon completion of the affidavit, DIAZ provided it to LEYVA, PEREZ and GUTIERREZ. At all times, DIAZ, LEYVA, PEREZ and GUTIERREZ knew that the State Attorney would utilize and rely upon the affidavit in determining whether RODRIGUEZ would be charged with criminal offenses and the course and manner the State Attorney would prosecute RODRIGUEZ.

148)     PEREZ produced a sworn affidavit charging RODRIGUEZ with one count of Grand Theft.

149)     At all times material, Section 23.1225(5)(b), Florida Statutes, stated:

> A listing of such agencies or entities and the officers and employees of such agencies or entities rendering assistance pursuant to [a Mutual Aid Agreement] must be maintained by the agency or entity requesting such assistance and filed at the end of the 90-day period with the Florida Department of Law Enforcement.

150)     Neither MEDLEY nor MIAMI-DADE ever created, maintained, or possessed any record/listing of any assistance rendered to or received by each other as mandated by §23.1225(5)(b).

151)     Consequently, neither MEDLEY nor MIAMI-DADE ever filed any such listing with the Florida Department of Law Enforcement. as mandated by § 23.1225(5)(b).

152)     Because both MEDLEY and DADE never created, maintained, possessed, and filed a listing as mandated by § 23.1225(5)(b), MEDLEY and DADE established that the actions by

MEDLEY and its employees did not occur pursuant to the MAA and Policy 347. Accordingly, at no time did LEYVA, PEREZ, TORRES, and GUTIERREZ enjoy or possess law enforcement powers and authority in unincorporated DADE and outside MEDLEY.

153)     MEDLEY officers transported RODRIGUEZ to the DADE jail. At the jail, LEYVA, PEREZ and GUTIERREZ submitted both affidavits to the jail officials. As a result, RODRIGUEZ was booked for the charges of grand theft, three counts of battery on a law enforcement officer, and three counts of resisting arrest with violence.

154)     The probable cause affidavits were presented to the jail staff. The sworn probable cause affidavit was required in order for RODRIGUEZ to be booked.

155)     Bail was set with each bond set as follows:

a)     Grand Theft. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $5,000.00

b)     Battery on a Law Enforcement Officer. . . . . . . . . . . . . . . . . . . $5,000.00

c)     Battery on a Law Enforcement Officer. . . . . . . . . . . . . . . . . . . $5,000.00

d)     Battery on a Law Enforcement Officer. . . . . . . . . . . . . . . . . . . $5,000.00

e)     Resisting Arrest With Violence . . . . . . . . . . . . . . . . . . . . . . . . $5,000.00

f)     Resisting Arrest With Violence . . . . . . . . . . . . . . . . . . . . . . . . $5,000.00

g)     Resisting Arrest With Violence . . . . . . . . . . . . . . . . . . . . . . . . $5,000.00

156)     Bail totaled $35,000.00 and it cost 10% of each bond amount to have a bailbondsman post the bail. RODRIGUEZ paid $3,500.00 to the bailbondsman as a non-refundable fee to post the bonds.

157)     After the bail was posted, RODRIGUEZ was released from jail on conditions.

158)     RODRIGUEZ retained legal counsel and paid his attorney $10,000.00.

159)     On or about February 15, 2019. the State Attorney filed an Information charging RODRIGUEZ with one count of Grand Theft, three Counts of Battery on a Law Enforcement Officer, and one count of Resisting Arrest with Violence.

160)     RODRIGUEZ faced a 5-year prison sentence for each charge for a total possible sentence of 25 years in prison.

161)     At the time of filing the Information, the State Attorney dismissed two charges of Resisting Arrest with Violence because according to clearly established law of the Florida Supreme Court only one count of Resisting Arrest with Violence can be charged for each incident no matter how many police officers are involved.

162)     The MDPD failed to train and supervise its officers including DIAZ that only one count of Resisting Arrest with Violence can be charged for each incident no matter how many police officers are involved. As a result of being arrested on those unauthorized and improper charges, RODRIGUEZ had to pay an additional $1,000.00 to the bailbondsman in order to secure his bond.

163)     The charges were filed by the State Attorney as a result of the sworn documents received from DIAZ and the sworn testimony and documents received from LEYVA, PEREZ and GUTIERREZ. At all times material, GUTIERREZ was the supervisor of PEREZ and approved all of his reports. In approving the reports, GUTIERREZ adopted those documents as his own.

164)     In addition, at their respective depositions, LEYVA, PEREZ and GUTIERREZ also swore to the same information that was written in their sworn and unsworn reports and sworn statements to the State Attorney which were utilized to continue the prosecution of RODRIGUEZ.

165)    On or about September 16, 2019, the State Attorney dismissed all charges against RODRIGUEZ. As a result, PLAINTIFF RODRIGUEZ was never convicted by any prosecuting authority of any criminal offense arising from his arrest occurring on January 16, 2019.

166)    At no time from the time of filing the Information through the time of the dismissal of all the charges did LEYVA, PEREZ, GUTIERREZ, DIAZ, DOE, any member of the MDPD, any official or agent of DADE, any member of the MEDLEY police department, or any agent or official of MEDLEY request the State Attorney to dismiss any charge.

167)    At all times material, MEDLEY Policy 300.9 mandated that the patrol lieutenant compile an annual report of all use of force incidents which is submitted to the then CHIEF.

300.9 USE OF FORCE ANALYSIS

At least annually, the Patrol Lieutenant shall prepare an analysis report on use of force incidents. The report should be submitted to the Chief of Police. The report should not contain the names of officers, suspects or case numbers, and should include:

(a)    The identification of any trends in the use of force by members.

(b)    Training needs recommendations.

(c)    Equipment needs recommendations.

(d)    Policy revision recommendations.

168)    Since at least 2006, no Use of Force Analysis report was prepared.

169)    Since October 15, 2006, Arturo JINETE and Jeanette SAID-JINETE have been husband and wife.

170)    On or about August 15, 2006, Arturo JINETE and Jeanette SAID-JINETE were engaged to be married.

171)   At all times material and since July 13, 2015, Arturo JINETE has been the patrol lieutenant.

172)   Since February 17, 2011, Jeanette SAID-JINETE has been the CHIEF of Police of MEDLEY.

173)   Since at least 2006, MEDLEY and SAID-JINETE and the predecessor CHIEFs failed to properly perform their responsibilities in regard to investigating the use of force by the Medley police department officers,

174)   MEDLEY and SAID-JINETE and the predecessor CHIEFs failed to follow the accepted industry standards and practices in the investigations of allegations of use of force and follow its policies including Section 300.7 by not properly investigating the use of force by its officers by, among other things, relying solely on the reports and statements of its officers, and in regard to each incident involving the use of force by:

    a)    Failing to identify, locate, and interview witnesses;

    b)    Not determining whether there were independent photographs and video recordings and failing to obtain copies of the photographs and video recordings including failing to take overall photographs of the uninjured areas;

    c)    Failing to attempt to communicate and communicating with the subject of the use of force;

    d)    Not mandating that photographs be taken of the subject and the scene of the use of force;

    e)     Failing of the supervisor to travel to the scene of the incident and requiring the supervisor to;

        (A)    Take the officer's and subject's statements of actions;

        (B)    Have the injuries sustained and medical treatment needed or desired be documented;

        (C)    Identify and interview witnesses;

        (D)    Document the scene of the incident;

        (E)    Interview the health care providers concerning the injuries sustained and their consistency with reported uses of force;

        (F)    Complete the use of force report; and

        (G)    Notify the appropriate authority via the chain of command in cases involving injury or complaint of injury, hospitalization, or death of a person resulting or allegedly resulting from an officer's use of force;

    f)     Failing to fully evaluate the circumstances surrounding the incident; and

    g)     Failing to obtaining and evaluate medical records of the subject.

175)    In addition, for at least five (5) years prior to January 2019, the TOWN failed to follow industry standards and Policy 300.9 by failing to compile and summarize the use of force incidents of its officers, at least annually, in a report in order to evaluate whether there is an alert as to the frequency of the use of force in order to determine if the use was excessive. The report should include the findings of internal and external investigations.

176)    In addition, the DEPARTMENT failed to follow the accepted industry standards and practices in the investigations of allegations of use of force by not properly analyzing and evaluating:

a)    the nature of the incident;

b)    the location where the incident took place;

c)    whether the incident was in response to a call for service or an officer initiated action;

d)    the full circumstances claimed to support a detention or arrest decision;

e)    information on the officer, including age, sex, race, ethnicity, years of service, and whether serving full-time;

f)    the size and build of the subject in relationship to the officer;

g)    the reason for the initial contact between the subject and the officer, including any suspected unlawful or criminal activity;

h)    whether the incident was an ambush;

i)    whether the officer was:

   (A)    readily identifiable as law enforcement, including whether the officer was in uniform or plain clothes;

   (B)    operating a marked or unmarked law enforcement vehicle or on foot patrol;

   (C)    on or off duty; and

   (D)    accompanied by other officers.

j)    whether a supervisor or a senior officer acting in a supervisory capacity was present or consulted at any point during the incident;

k)    whether backup was requested and, if so, when it arrived;

l)    whether the officer approached the subject or was approached by the subject;

m)    whether associates of the subject were present at the time;

n)    whether witnesses were present at the time;

o)     whether there was any cause to believe the subject was armed or hostile;

p)     the subject's general demeanor, including any known or apparent impairments;

q)     any verbal exchange that transpired;

r)     the full circumstances that supported a detention or arrest decision, where applicable, to include the severity of the crime or evidence discovered prior to the detention or arrest attempt by the officer(s);

s)     any threat to the officer or another person;

t)     type, intensity, and duration of resistance to arrest by the subject to include any threat to others;

u)     any de-escalation attempts made;

v)     any force options available to the officer and the reason for the level of force response employed;

w)     any subject and officer injury or complaint of injury, medical treatment received, or refusal of medical treatment;

x)     photographs of subject and officer injuries;

y)     video and audio recordings made of the incident, including those made by body-worn cameras;

z)     have the internal affairs division or other appropriate investigative authority review all use-of-force reports; and

aa)     interview health care providers concerning the injuries sustained and their consistency with reported uses of force.

-36-

177)    By the time of arrest of PLAINTIFF RODRIGUEZ and all actions which occurred

with regard to his arrest and the entry onto the PROPERTY and residence it was the policy and

custom of the DEPARTMENT and its superiors and supervising officials to not properly investigate

matters where there was any allegation of the use of force and by rushing to judgment regarding

whether the use of force was justified.

## CAUSES OF ACTION

### COUNT 1

### STATE FALSE ARREST/SEIZURE CLAIM BY RODRIGUEZ AGAINST TOWN

For his cause of action against DEFENDANT TOWN in Count 1, PLAINTIFF RODRIGUEZ states:

178)    PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 1, the

allegations of paragraphs 1 through 177.

179)    On or about January 16, 2019, DEFENDANTS LEYVA, PEREZ, TORRES and

GUTIERREZ proximately caused the detention/seizure of RODRIGUEZ at the PROPERTY in the

absence of probable cause that RODRIGUEZ committed any criminal offense.

180)    The actions of DEFENDANTS LEYVA, PEREZ, TORRES and GUTIERREZ, in

causing the detention/seizure of PLAINTIFF RODRIGUEZ in the absence of probable cause were

taken in the absence of lawful authority. The actions of DEFENDANTS LEYVA, PEREZ, TORRES

and GUTIERREZ constitute false arrest/false imprisonment/seizure of PLAINTIFF RODRIGUEZ

under Florida law.

-37-

181)     The false arrest/false imprisonment/seizure of RODRIGUEZ was committed by DEFENDANTS LEYVA, PEREZ, TORRES and GUTIERREZ in the course and scope of their employment as purported police officers for TOWN while they had no legal authority to act as police officers.

182)     DEFENDANTS LEYVA, PEREZ, TORRES and GUTIERREZ had no law enforcement authority/power at the PROPERTY and residence

183)     As a direct and proximate result RODRIGUEZ suffered cost of bond, physical injury, and loss of his freedom, suffered loss of his liberty, mental anguish, costs of representation and costs of bond and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays:

a)     Judgment for compensatory damages against TOWN in excess of $30,000;

b)     Costs of suit;

c)     Trial by jury as to issues so triable; and

d)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 2

## STATE FALSE ARREST/SEIZURE CLAIM BY RODRIGUEZ AGAINST DADE

For his cause of action against DEFENDANT DADE in Count 2, PLAINTIFF RODRIGUEZ states:

184)    PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 2, the allegations of paragraphs 1 through 177.

185)    On or about January 16, 2019, DEFENDANTS MILLER, CALLEJAS and J.E. PEREZ maintained the illegal detention/seizure of RODRIGUEZ in the absence of legal authority.

186)    After RODRIGUEZ was seized, handcuffed, and in the custody of DEFENDANTS MILLER, J.E. PEREZ and CALLEJAS, they failed to determine whether DEFENDANTS MILLER, LEYVA, PEREZ, TORRES and GUTIERREZ had any legal authority to act as police officers at the PROPERTY and in unincorporated DADE.

187)    In failing to inquire of DEFENDANTS LEYVA, PEREZ, TORRES and GUTIERREZ and to contact the Miami-Dade Police Department, and otherwise investigate regarding the authority of DEFENDANTS LEYVA, PEREZ, TORRES to act as law enforcement officers at the PROPERTY and in unincorporated DADE, DEFENDANTS MILLER, J.E. PEREZ and CALLEJAS, ignored information they knew or should have known questioning the authority of DEFENDANTS LEYVA, PEREZ, TORRES to act as police officers at the PROPERTY and in unincorporated DADE.

188)    Further, DEFENDANTS J.E. PEREZ, CALLEJAS, TORRES, and MILLER could not rely on the fellow officer rule in seizing RODRIGUEZ because DEFENDANTS LEYVA, PEREZ, TORRES and GUTIERREZ had no legal authority to act as police officers at the

PROPERTY and incorporated DADE and were, in fact, not police officers nor purported police officers, and had no law enforcement powers.

189)    Despite never determining whether DEFENDANTS LEYVA, PEREZ, and GUTIERREZ had lawful authority to arrest, seize, or otherwise detain RODRIGUEZ outside the TOWN and in unincorporated DADE, DEFENDANTS MILLER, J.E. PEREZ and CALLEJAS maintained custody and seizure of RODRIGUEZ.

190)    The seizure of RODRIGUEZ was committed by DEFENDANTS MILLER, J.E. PEREZ and CALLEJAS in the course and scope of their employment as deputy sheriffs and police officers of DADE.

191)    As a direct and proximate result PLAINTIFF RODRIGUEZ suffered physical injury, and loss of his freedom, suffered loss of his liberty, mental anguish, and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, attorney fees, and costs of bond and defense, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays:

a)    Judgment for compensatory damages against DADE in excess of $30,000;

b)    Costs of suit;

c)    Trial by jury as to issues so triable; and

d)    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 3

### MALICIOUS PROSECUTION FOR GRAND THEFT CLAIM BY RODRIGUEZ AGAINST DEFENDANTS PEREZ AND GUTIERREZ

For his cause of action against DEFENDANTS PEREZ and GUTIERREZ in Count 3, PLAINTIFF RODRIGUEZ states:

192)     PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 3, the allegations of paragraphs 1 through 177.

193)     On or about January 16, 2019, DEFENDANT PEREZ knew or should have known that no probable cause existed for the charge of grand theft he made against PLAINTIFF RODRIGUEZ, and the arrest he made of RODRIGUEZ was made in the absence of legal authority.

194)     The prosecution, by DEFENDANT PEREZ of PLAINTIFF RODRIGUEZ was done without probable cause and was commenced and continued by DEFENDANT PEREZ from malice towards PLAINTIFF RODRIGUEZ and to wrong and injure him. DEFENDANT PEREZ knew, or should have known, that the prosecution of PLAINTIFF RODRIGUEZ was false and groundless, and without probable cause.

195)     By charging PLAINTIFF RODRIGUEZ with grand theft, DEFENDANT PEREZ filed a false charge and instituted a false criminal action against PLAINTIFF RODRIGUEZ

196)     DEFENDANT PEREZ delivered false information to the prosecutor in the form of sworn police reports, other documents, and testimony at deposition.

197)     As a further direct and proximate result of the actions of DEFENDANT PEREZ, PLAINTIFF RODRIGUEZ incurred attorney's fees and expenses in the defense of the charge against

him. As a further direct and proximate result, PLAINTIFF RODRIGUEZ further suffered mental anguish and loss of his freedom.

198)    In doing the things alleged herein, DEFENDANT PEREZ acted with actual malice and was guilty of wanton and outrageous disregard of the rights and feelings of PLAINTIFF RODRIGUEZ.

199)    As a direct and proximate result PLAINTIFF RODRIGUEZ suffered physical injury, and loss of his freedom, suffered loss of his liberty, mental anguish, attorney fees and costs of bond and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays in regard to DEFENDANT PEREZ:

a)    Judgment for compensatory damages in excess of thirty thousand dollars ($30,000);

b)    Judgment for exemplary damages;

c)    Costs of suit;

d)    Trial by jury as to all issues so triable; and

e)    Such other relief as this Honorable Court may deem just and appropriate.

**COUNT 4**

**MALICIOUS PROSECUTION FOR BATTERY ON LAW ENFORCEMENT AND RESISTING ARREST CLAIM BY RODRIGUEZ AGAINST DEFENDANTS DOE, DIAZ, LEYVA, PEREZ, AND GUTIERREZ**

For his cause of action against DEFENDANTS DOE, DIAZ, LEYVA, PEREZ, and GUTIERREZ, individually in Count 4, PLAINTIFF RODRIGUEZ states:

200)    PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 4, the allegations of paragraphs 1 through 177.

201)    DEFENDANTS DOE, DIAZ, LEYVA, PEREZ, and GUTIERREZ knew or should have known that no probable cause existed for the charges of three counts of battery on a law enforcement officer and one count of resisting arrest with violence made against PLAINTIFF RODRIGUEZ, and the arrests made of RODRIGUEZ were made in the absence of legal authority.

202)    The prosecution of PLAINTIFF RODRIGUEZ for the charges of three counts of battery on a law enforcement officer and one count of resisting arrest with violence was done without probable cause and was commenced and continued by DEFENDANTS DOE, DIAZ, LEYVA, PEREZ, and GUTIERREZ from malice towards PLAINTIFF RODRIGUEZ and to wrong and injure him. DEFENDANTS DOE, DIAZ, LEYVA, PEREZ, and GUTIERREZ well knew, or should have known, that the prosecution of PLAINTIFF RODRIGUEZ was false and groundless, and without probable cause.

203)    By charging PLAINTIFF RODRIGUEZ with three counts of battery on a law enforcement officer and one count of resisting arrest with violence, DEFENDANTS DOE, DIAZ, LEYVA, PEREZ, and GUTIERREZ filed false charges and instituted false criminal action against PLAINTIFF RODRIGUEZ.

204)     DEFENDANTS DOE, DIAZ, LEYVA, PEREZ, and GUTIERREZ delivered false information to the prosecutor in the form of police reports and other documents.

205)     As a further direct and proximate result of actions of, DEFENDANTS DOE, DIAZ, LEYVA, PEREZ, and GUTIERREZ, PLAINTIFF RODRIGUEZ incurred attorney's fees and expenses in the defense of the charges against him.

206)     In doing the things alleged herein, DEFENDANTS DOE, DIAZ, LEYVA, PEREZ, and GUTIERREZ acted with actual malice and was guilty of wanton and outrageous disregard of the rights and feelings of PLAINTIFF RODRIGUEZ.

207)     As a direct and proximate result PLAINTIFF RODRIGUEZ suffered physical injury, and loss of his freedom, suffered loss of his liberty, mental anguish, attorney fees, and costs of bond and defense, and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays in regard to DEFENDANTS DOE, DIAZ, LEYVA, PEREZ, and GUTIERREZ:

a)     Judgment for compensatory damages in excess of thirty thousand dollars ($30,000);

b)     Judgment for exemplary damages against DEFENDANTS DOE, DIAZ, GUTIERREZ, LEYVA, and PEREZ

c)     Costs of suit;

-44-

d)      Trial by jury as to all issues so triable; and

e)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 5

## STATE VIOLATION OF PRIVACY CLAIM BY RODRIGUEZ AGAINST MEDLEY

For his cause of action against Defendant MEDLEY in Count 5, RODRIGUEZ states:

208)    RODRIGUEZ realleges and adopts, as if fully set forth in Count 5, the allegations of paragraphs 1 through 177.

209)    DEFENDANTS LEYVA, PEREZ and GUTIERREZ were purportedly police officers and agents of the DEFENDANT TOWN when they intruded and invaded into areas of physical solitude by entering into and remaining on the PROPERTY and the residence without permission of any occupant or owner including RODRIGUEZ and HUERTA and without lawful authority.

210)    At all times material RODRIGUEZ had an expectation of privacy in his private and personal residence and PROPERTY.

211)    The actions of DEFENDANTS GUTIERREZ, LEYVA, and PEREZ were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF RODRIGUEZ and were done with a reckless or callous indifference to the federally protected rights of PLAINTIFF RODRIGUEZ

212)    As a direct and proximate result PLAINTIFF RODRIGUEZ suffered physical injury, and loss of his freedom, mental anguish, attorney fees, and costs of bond and defense, mental suffering and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and

mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays:

a) Judgment for compensatory damages against TOWN in excess of $30,000;

b) Costs of suit;

c) Trial by jury as to issues so triable; and

d) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 6

## STATE VIOLATION OF PRIVACY CLAIM BY HUERTA AGAINST MEDLEY

For his cause of action against Defendant MEDLEY in Count 6, HUERTA states:

213) HUERTA realleges and adopts, as if fully set forth in Count 6, the allegations of paragraphs 1 through 177.

214) DEFENDANTS LEYVA, PEREZ and GUTIERREZ were purportedly police officers and agents of the DEFENDANT TOWN when they intruded and invaded into areas of physical solitude by entering into and remaining on the PROPERTY and the residence without permission of any occupant or owner including RODRIGUEZ and HUERTA and without lawful authority.

215) At all times material HUERTA had an expectation of privacy in her private and personal residence and PROPERTY.

216) The actions of DEFENDANTS GUTIERREZ, LEYVA, and PEREZ were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or

-46-

oppress PLAINTIFF HUERTA and were done with a reckless or callous indifference to the federally protected rights of PLAINTIFF HUERTA.

217)     As a direct and proximate result PLAINTIFF HUERTA suffered physical injury, and loss of her freedom, mental anguish, mental suffering, attorney fees, and costs of bond and defense, and loss of capacity for the enjoyment of life. She suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of her physical and mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF HUERTA will suffer the losses and damages in the future..

WHEREFORE, PLAINTIFF HUERTA prays:

      a)      Judgment for compensatory damages against TOWN in excess of $30,000;

      b)      Costs of suit;

      c)      Trial by jury as to issues so triable; and

      d)      Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 7

## STATE TRESPASS ON THE CASE CLAIM BY RODRIGUEZ AGAINST TOWN

For his cause of action against Defendant TOWN in Count 7, PLAINTIFF RODRIGUEZ states:

218)     PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 7, the allegations of paragraphs 1 through 177.

219)     DEFENDANTS LEYVA, PEREZ and GUTIERREZ were agents and purportedly police officers of DEFENDANT TOWN when they trespassed, entered into and remained in the

PROPERTY and residence without permission of any occupant or owner and without lawful authority.

220)    At all times material RODRIGUEZ had an expectation of privacy in his PROPERTY and residence.

221)    As a consequential and collateral damages of the trespass, RODRIGUEZ suffered damages including mental pain and suffering.

222)    As a direct and proximate result PLAINTIFF RODRIGUEZ suffered physical injury, and loss of his freedom, suffered loss of his liberty, mental anguish, attorney fees, and costs of bond and defense, and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays:

a)    Judgment for compensatory damages against TOWN in excess of $30,000;

b)    Costs of suit;

c)    Trial by jury as to issues so triable; and

d)    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 8

### STATE TRESPASS ON THE CASE CLAIM BY HUERTA AGAINST TOWN

For her cause of action against Defendant TOWN in Count 8, PLAINTIFF HUERTA states:

223)   PLAINTIFF HUERTA realleges and adopts, as if fully set forth in Count 8, the allegations of paragraphs 1 through 177.

224)   DEFENDANTS LEYVA, PEREZ and GUTIERREZ were agents and purportedly police officers of DEFENDANT TOWN when they trespassed, entered into and remained in the PROPERTY and residence without permission of any occupant or owner and without lawful authority.

225)   At all times material HUERTA had an expectation of privacy in her PROPERTY and residence.

226)   As a consequential and collateral damages of the trespass, HUERTA suffered damages including mental pain and suffering.

227}   As a direct and proximate result, PLAINTIFF HUERTA suffered physical injury, and loss of her freedom, mental anguish, mental suffering, attorney fees, and costs of bond and defense and loss of capacity for the enjoyment of life. She suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of her physical and mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF HUERTA will suffer the losses and damages in the future..

WHEREFORE, PLAINTIFF HUERTA prays:

a)   Judgment for compensatory damages against TOWN in excess of $30,000;

b)   Costs of suit;

-49-

    c)     Trial by jury as to issues so triable; and

    d)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 9

## BATTERY CLAIM BY RODRIGUEZ AGAINST TOWN

For his cause of action against Defendant TOWN in Count 9, PLAINTIFF RODRIGUEZ states:

228)    PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 9, the allegations of paragraphs 1 through 177.

229)    At all times material, DEFENDANTS LEYVA, PEREZ and GUTIERREZ commenced a course of conduct such that they intended to touch or make contact with PLAINTIFF RODRIGUEZ's body, actually touched PLAINTIFF RODRIGUEZ and the contact was harmful or offensive and occurred without the consent of PLAINTIFF RODRIGUEZ.

230)    At all times material, DEFENDANTS LEYVA, PEREZ and GUTIERREZ, were without legal authority to act as law enforcement officers and they commenced a course of conduct such that they intended to touch or make contact with PLAINTIFF RODRIGUEZ's body, actually touched PLAINTIFF RODRIGUEZ and the contact was harmful, offensive and occurred without the consent of PLAINTIFF RODRIGUEZ'.

231)    At all times material, DEFENDANTS LEYVA, PEREZ and GUTIERREZ commenced a course of conduct such that their actions occurred with great force and excessive use of force causing PLAINTIFF RODRIGUEZ severe bodily injury. Any force or touching, even minimal, was offensive because DEFENDANTS LEYVA, PEREZ and GUTIERREZ did not have law enforcement powers outside of MEDLEY.

232)    The above-mentioned act constitute unlawful assaults and batteries by DEFENDANTS LEYVA, PEREZ and GUTIERREZ on PLAINTIFF RODRIGUEZ.

233)    At all times material, DEFENDANTS LEYVA, PEREZ and GUTIERREZ were the agents, employees and servants of DEFENDANT TOWN and the TOWN was the respondeat superior of them.

234)    As a direct and proximate result PLAINTIFF RODRIGUEZ suffered physical injury, and loss of his freedom, mental anguish, mental suffering and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays:

a)     Judgment for compensatory damages against DEFENDANT TOWN in excess of $30,000 dollars;

b)     Costs of suit;

c)     Trial by jury as to all issues so triable; and

d)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 10

## SECOND BATTERY CLAIM BY RODRIGUEZ AGAINST TOWN

For his cause of action against Defendant TOWN in Count 10, PLAINTIFF RODRIGUEZ states:

235)    PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 10, the allegations of paragraphs 1 through 177.

236)    At all times material, DEFENDANT TORRES commenced a course of conduct such that he intended to touch or make contact with PLAINTIFF RODRIGUEZ's body, actually touched PLAINTIFF RODRIGUEZ and the contact was offensive and occurred without the consent of PLAINTIFF RODRIGUEZ. Any touching, even minimal, was excessive because DEFENDANT TORRES did not have law enforcement powers outside of MEDLEY.

237)    At all times material, DEFENDANT TORRES was without legal authority to act as a law enforcement officer and he commenced a course of conduct such that he intended to touch or make contact with PLAINTIFF RODRIGUEZ's body, actually touched PLAINTIFF RODRIGUEZ and the contact was offensive and occurred without the consent of PLAINTIFF RODRIGUEZ.

238)    At all times material DEFENDANT TORRES was the agent, employee and servant of DEFENDANT TOWN and the TOWN was the respondeat superior of TORRES.

239)    The above-mentioned act constitute unlawful assaults and batteries by DEFENDANTS LEYVA, PEREZ and GUTIERREZ on PLAINTIFF RODRIGUEZ.

240)    As a direct and proximate result PLAINTIFF RODRIGUEZ suffered physical injury, and loss of his freedom, mental anguish, mental suffering and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation.

The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays:

a)     Judgment for compensatory damages against DEFENDANT TOWN in excess of $30,000 dollars;

b)     Costs of suit;

c)     Trial by jury as to all issues so triable; and

d)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 11

### BATTERY CLAIM BY RODRIGUEZ AGAINST DADE

For his cause of action against Defendant DADE in Count 11, PLAINTIFF RODRIGUEZ states:

241)   PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 11, the allegations of paragraphs 1 through 177.

242)    At all times material, DEFENDANTS J.E. PEREZ and CALLEJAS commenced a course of conduct such that they intended to touch or make contact with PLAINTIFF RODRIGUEZ's body, actually touched PLAINTIFF RODRIGUEZ and the contact was offensive and occurred without the consent of PLAINTIFF RODRIGUEZ.

243)    At all times material, DEFENDANTS J.E. PEREZ and CALLEJAS were without legal authority to touch or make contact with PLAINTIFF RODRIGUEZ's body, actually touched PLAINTIFF RODRIGUEZ and the contact was offensive and occurred without the consent of PLAINTIFF RODRIGUEZ. Any force or touching, even minimal, was offensive.

244) At all times material DEFENDANTS J.E. PEREZ and CALLEJAS were the agents, employees and servants of DEFENDANT DADE and DADE was the respondeat superior of DEFENDANTS J.E. PEREZ and CALLEJAS.

245) The above-mentioned act constitute unlawful assaults and batteries by DEFENDANTS LEYVA, PEREZ and GUTIERREZ on PLAINTIFF RODRIGUEZ.

246) As a direct and proximate result PLAINTIFF RODRIGUEZ suffered physical injury, and loss of his freedom, mental anguish, mental suffering and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays:

a) Judgment for compensatory damages against DEFENDANT DADE in excess of $30,000 dollars;

b) Costs of suit;

c) Trial by jury as to all issues so triable; and

d) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 12

### SECOND BATTERY CLAIM BY RODRIGUEZ AGAINST DADE

For his cause of action against Defendant DADE in Count 12, PLAINTIFF RODRIGUEZ states:

247)    PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 12, the allegations of paragraphs 1 through 177.

248)    At all times material, DEFENDANT MILLER commenced a course of conduct such that he intended to touch or make contact with PLAINTIFF RODRIGUEZ's body, actually touched PLAINTIFF RODRIGUEZ and the contact was offensive and occurred without the consent of PLAINTIFF RODRIGUEZ. Any force or touching, even minimal, was offensive because DEFENDANTS LEYVA, PEREZ and GUTIERREZ did nit have law enforcement powers outside of MEDLEY.

249)    At all times material, DEFENDANT MILLER was without legal authority to touch or make contact with PLAINTIFF RODRIGUEZ's body, actually touched PLAINTIFF RODRIGUEZ and the contact was offensive and occurred without the consent of PLAINTIFF RODRIGUEZ. The above-mentioned act constitute unlawful assaults and batteries by DEFENDANTS LEYVA, PEREZ and GUTIERREZ on PLAINTIFF RODRIGUEZ.

250)    At all times material DEFENDANT MILLER was the agent, employee and servant of DEFENDANT DADE and DADE was the respondeat superior of DEFENDANT MILLER.

251)    As a direct and proximate result PLAINTIFF RODRIGUEZ suffered physical injury, and loss of his freedom, mental anguish, mental suffering and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation.

The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays:

a) Judgment for compensatory damages against DEFENDANT DADE in excess of $30,000 dollars;

b) Costs of suit;

c) Trial by jury as to all issues so triable; and

d) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 13

### SECTION 1983 FIRST AMENDMENT RETALIATION BY DEFENDANTS GUTIERREZ, LEYVA, AND PEREZ OF PLAINTIFF RODRIGUEZ

For his cause of action against DEFENDANTS GUTIERREZ, LEYVA, and PEREZ in Count 13, PLAINTIFF RODRIGUEZ states:

252) PLAINTIFF RODRIGUEZ realleges and adopts as if fully set forth in Count 13, the allegations of paragraphs 1 through 177.

253) The false imprisonment and detention of PLAINTIFF RODRIGUEZ, illegal entry onto the PROPERTY and the illegal entry into his residence without search and arrest warrants, and pummeling and choking of RODRIGUEZ by DEFENDANTS GUTIERREZ, LEYVA, and PEREZ were a result of and motivated by a retaliation against PLAINTIFF RODRIGUEZ for his words and actions to DEFENDANTS GUTIERREZ, LEYVA, and PEREZ when he refused to travel to the MEDLEY Police Station when directed by DEFENDANT PEREZ, when he refused to be

-56-

handcuffed, when he refused to exit his residence, and when he made derogatory and negative statements about police officers and when DEFENDANTS GUTIERREZ, LEYVA, and PEREZ were without police powers. *Davis v. Williams,* 451 F.3d 759, 767 (11th Cir. 2006).

254).    It was clearly established law at the time of PLAINTIFF RODRIGUEZ's arrest that "the FirstAmendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill,* 107 SECT. 2502, 2509 (1987).

255)    It was clearly established law at the time PLAINTIFF RODRIGUEZ's arrest that "[the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 2510.

256)    The actions by DEFENDANTS GUTIERREZ, LEYVA, and PEREZ occurred in the absence of legal authority, and was likely to deter a person of ordinary firmness from the exercise of First Amendment rights. The conduct of DEFENDANTS GUTIERREZ, LEYVA, and PEREZ towards PLAINTIFF RODRIGUEZ constitutes unlawful retaliation in violation of the clearly established rights of PLAINTIFF RODRIGUEZ under the First and Fourteenth Amendments, and 42 U.S.C. § 1983.

257)    As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, PLAINTIFF RODRIGUEZ suffered bodily injury and resulting pain and suffering, loss of his freedom, suffered grievously, attorney fees, and costs of bond and defense, and was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and suffered damaged reputation. The losses and damages are either

permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

258)    The actions of DEFENDANTS GUTIERREZ, LEYVA, and PEREZ were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF RODRIGUEZ and were done with a reckless or callous indifference to the federally protected rights of PLAINTIFF RODRIGUEZ

WHEREFORE, PLAINTIFF RODRIGUEZ prays:

a)    Judgment for compensatory damages in excess of $30,000 dollars against DEFENDANTS GUTIERREZ, LEYVA, and PEREZ;

b)    Judgment for exemplary damages against DEFENDANTS GUTIERREZ, LEYVA, and PEREZ;

c)    Costs of suit;

d)    Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)    Trial by jury as to issues so triable; and

f)    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 14

## SECTION 1983 CLAIM OF A VIOLATION OF FIRST AMENDMENT REGARDING THREAT BY DEFENDANT GUTIERREZ TO PLAINTIFF HUERTA

For her cause of action against DEFENDANT GUTIERREZ in Count 14, PLAINTIFF HUERTA states:

259)    PLAINTIFF HUERTA realleges and adopts as if fully set forth in Count 14, the allegations of paragraphs 1 through 177.

260)    DEFENDANT GUTIERREZ threatened PLAINTIFF HUERTA with arrest if she continued video recording the events in her residence when DEFENDANTS GUTIERREZ, LEYVA, and PEREZ illegally entered her PROPERTY and residence, pummeled and choked PLAINTIFF RODRIGUEZ, handcuffed and removed him from the residence and during the course thereof PLAINTIFF HUERTA protested and video recorded their actions. The threat by DEFENDANT GUTIERREZ was a result of and motivated against PLAINTIFF HUERTA for the video recording of earlier events, her protestations, and the continued video recording.

261)    The threat was made to scare and intimidate PLAINTIFF HUERTA to stop video recording and which scared and intimidated PLAINTIFF HUERTA such that she stopped recording, The threat was made in the absence of probable cause that PLAINTIFF HUERTA committed any criminal offense and at the time and location of the threat, DEFENDANT GUTIERREZ was without police powers.

262)    It was clearly established law at the time of the threat that the First Amendment guarantees the right of citizens to video record the actions of police officers and to video record within their residence.

263)    The conduct of DEFENDANT GUTIERREZ towards PLAINTIFF HUERTA constitutes an unlawful violation of the clearly established rights of PLAINTIFF HUERTA under the First and Fourteenth Amendments and 42 U.S.C. § 1983 and would likely deter a person of ordinary firmness from the exercise of First Amendment rights.

264)     The actions of DEFENDANT GUTIERREZ were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF HUERTA and were done with a reckless or callous indifference to the federally protected rights of PLAINTIFF HUERTA.

WHEREFORE, PLAINTIFF HUERTA prays:

a)     Judgment for compensatory damages in excess of $30,000 dollars against DEFENDANT GUTIERREZ;

b)     Judgment for exemplary damages against DEFENDANT GUTIERREZ;

c)     Costs of suit;

d)     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)     Trial by jury as to issues so triable; and

f)     Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 15

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS OF PLAINTIFF RODRIGUEZ BY DEFENDANTS GUTIERREZ, LEYVA, AND PEREZ

For his cause of action against DEFENDANTS GUTIERREZ, LEYVA, and PEREZ in Count 15, PLAINTIFF RODRIGUEZ states:

265)     PLAINTIFF RODRIGUEZ realleges and adopts as if fully set forth in Count 15, the allegations of paragraphs 1 through 177.

266)    The actions of DEFENDANTS GUTIERREZ, LEYVA, and PEREZ were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community.

267)    These actions constitute a case in which the recitation of the facts to the average member of the community would arouse his resentment against the actors, and lead him to exclaim "Outrageous!"

268)    These actions constitute either the intentional or reckless infliction of mental suffering.

269)    At all times material, DEFENDANTS GUTIERREZ, LEYVA, and PEREZ knew or should have known that it was likely that PLAINTIFF RODRIGUEZ would suffer emotional distress from their behavior.

270)    These actions have caused severe emotional distress to PLAINTIFF RODRIGUEZ.

271)     As a direct and proximate result PLAINTIFF RODRIGUEZ suffered mental anguish, mental suffering and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays in regard to DEFENDANTS LEYVA, PEREZ, and GUTIERREZ:

a)    Judgment for compensatory damages in excess of thirty thousand dollars ($30,000);

b)    Judgment for exemplary damages;

c)     Costs of suit;

d)     Trial by jury as to all issues so triable; and

e)     Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 16

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS OF PLAINTIFF HUERTA BY TOWN

For her cause of action against DEFENDANT TOWN in Count 16, PLAINTIFF HUERTA states:

272)    PLAINTIFF HUERTA realleges and adopts as if fully set forth in Count 16, the allegations of paragraphs 1 through 177.

273)    At all times material, PLAINTIFF HUERTA had a close personal relationship with PLAINTIFF RODRIGUEZ. PLAINTIFF HUERTA was and is the fiancé of PLAINTIFF RODRIGUEZ and they have been in a committed relationship and cohabited for many years. PLAINTIFF HUERTA is the mother of the children of PLAINTIFF RODRIGUEZ who lived at the residence.

274)    At all times material, PLAINTIFF HUERTA was present and observed when PLAINTIFF RODRIGUEZ was grabbed, pummeled, beaten, and choked by DEFENDANTS GUTIERREZ, LEYVA, and PEREZ. PLAINTIFF HUERTA was present and she observed when DEFENDANTS GUTIERREZ, LEYVA, and PEREZ illegally entered her residence and violated her right to privacy.

275)    PLAINTIFF HUERTA was present and observed when DEFENDANTS GUTIERREZ, LEYVA, and PEREZ illegally handcuffed PLAINTIFF RODRIGUEZ.

Contemporaneously, PLAINTIFF HUERTA was threatened by GUTIERREZ with arrest for video recording.

276)     As a result of observing and being involved in those events, PLAINTIFF HUERTA suffered severe and grave injuries.

277)     The gravity of the emotional injuries to PLAINTIFF HUERTA was clearly foreseeable to DEFENDANTS GUTIERREZ, LEYVA, and PEREZ. At all times material DEFENDANTS GUTIERREZ, LEYVA, and PEREZ were the agents, employees and servants of DEFENDANT TOWN and DEFENDANT TOWN was the respondeat superior of DEFENDANTS GUTIERREZ, LEYVA, and PEREZ.

278)     As a direct and proximate result PLAINTIFF HUERTA suffered mental anguish, and loss of capacity for the enjoyment of life. She suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of her physical and mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF HUERTA will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF HUERTA prays in regard to DEFENDANT TOWN:

a)     Judgment for compensatory damages in excess of thirty thousand dollars ($30,000);

b)     Costs of suit;

c)     Trial by jury as to all issues so triable; and

d)     Such other relief as this Honorable Court may deem just and appropriate.

-63-

## COUNT 17

### SECTION 1983 FOURTH AMENDMENT UNLAWFUL SEARCH BY DEFENDANTS GUTIERREZ, LEYVA, AND PEREZ OF PLAINTIFF RODRIGUEZ

For his cause of action against DEFENDANTS GUTIERREZ, LEYVA, and PEREZ in Count 17, PLAINTIFF RODRIGUEZ states:

279)   PLAINTIFF RODRIGUEZ realleges and adopts as if fully set forth in Count 17, the allegations of paragraphs 1 through 177.

280)   The actions of DEFENDANTS GUTIERREZ, LEYVA, and PEREZ constitute an unlawful search of and unlawful entry upon the PROPERTY and residence of PLAINTIFF RODRIGUEZ in violation of his Fourth Amendment rights within the meaning of 42 U.S.C. § 1983.

281)   The actions of DEFENDANTS GUTIERREZ, LEYVA, and PEREZ were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF RODRIGUEZ and were done with a reckless or callous indifference to the federally protected rights of PLAINTIFF RODRIGUEZ.

282)   As a direct and proximate result PLAINTIFF RODRIGUEZ suffered physical injury, and loss of his freedom, mental anguish, mental suffering, attorney fees, and costs of bond and defense and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays:

a)      Judgment for compensatory damages in excess of $30,000 dollars against DEFENDANTS GUTIERREZ, LEYVA, and PEREZ;

b)      Judgment for exemplary damages against DEFENDANTS GUTIERREZ, LEYVA, & PEREZ;

c)      Costs of suit;

d)      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)      Trial by jury as to issues so triable; and

f)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 18

### SECTION 1983 FOURTH AMENDMENT UNLAWFUL SEARCH BY DEFENDANTS GUTIERREZ, LEYVA, AND PEREZ OF PLAINTIFF HUERTA

For her cause of action against DEFENDANTS GUTIERREZ, LEYVA, and PEREZ in Count 18, PLAINTIFF HUERTA states:

283)    PLAINTIFF HUERTA realleges and adopts as if fully set forth in Count 18, the allegations of paragraphs 1 through 177.

284)    The actions of DEFENDANTS GUTIERREZ, LEYVA, and PEREZ constitute an unlawful search of and unlawful entry upon the PROPERTY and residence of PLAINTIFF HUERTA in violation of her Fourth Amendment rights within the meaning of 42 U.S.C. § 1983.

285)    With regard to the violations of the constitutional rights of PLAINTIFF HUERTA as alleged in this count, the actions of DEFENDANTS GUTIERREZ, LEYVA, and PEREZ were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design

to injure or oppress PLAINTIFF and were done with a reckless or callous indifference to the 239)

286)    As a direct and proximate result PLAINTIFF HUERTA suffered physical injury, and loss of her freedom, mental anguish, attorney fees, and costs of bond and defense, mental suffering and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of her physical and mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF HUERTA will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF HUERTA prays:

a)    Judgment for compensatory damages in excess of $30,000 dollars against DEFENDANTS GUTIERREZ, LEYVA, and PEREZ;

b)    Judgment for exemplary damages against DEFENDANTS GUTIERREZ, LEYVA, & PEREZ;

c)    Costs of suit;

d)    Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)    Trial by jury as to issues so triable; and

f)    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 19

## SECTION 1983 FOURTH AMENDMENT UNLAWFUL ARREST/SEIZURE BY DEFENDANTS GUTIERREZ, LEYVA, AND PEREZ OF PLAINTIFF RODRIGUEZ

For his cause of action against DEFENDANT PEREZ in Count 19, PLAINTIFF RODRIGUEZ states:

287) PLAINTIFF RODRIGUEZ realleges and adopts as if fully set forth in Count 19, the allegations of paragraphs 1 through 177.

288) The actions of DEFENDANTS GUTIERREZ, LEYVA, and PEREZ with regard to the grand theft charge constitute an unlawful arrest of PLAINTIFF RODRIGUEZ for grand theft in violation of his Fourth Amendment rights within the meaning of 42 U.S.C. § 1983.

289) The actions of DEFENDANTS GUTIERREZ, LEYVA, and PEREZ were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF RODRIGUEZ and were done with a reckless or callous indifference to the federally protected rights of PLAINTIFF RODRIGUEZ.

290) As a direct and proximate result PLAINTIFF RODRIGUEZ suffered cost of bond, physical injury, and loss of his freedom, mental anguish, attorney fees, and costs of bond and defense, mental suffering and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays:

a)      Judgment for compensatory damages in excess of $30,000 dollars against DEFENDANTS GUTIERREZ, LEYVA, and PEREZ;

b)      Judgment for exemplary damages against DEFENDANTS GUTIERREZ, LEYVA, and PEREZ;

c)      Costs of suit;

d)      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)      Trial by jury as to issues so triable; and

f)      Such other relief as this Honorable Court may deem just and appropriate

.

## COUNT 20

### SECTION 1983 FOURTH AMENDMENT ILLEGAL ARREST/SEIZURE BY DEFENDANTS GUTIERREZ, LEYVA, PEREZ, DOE, J.E. PEREZ, MILLER, CALLEJAS, DIAZ AND TORRES OF PLAINTIFF RODRIGUEZ

For his cause of action against DEFENDANTS GUTIERREZ, LEYVA, PEREZ, DOE, J.E. PEREZ, MILLER, CALLEJAS, DIAZ and TORRES in Count 20, PLAINTIFF RODRIGUEZ states:

291)    PLAINTIFF RODRIGUEZ realleges and adopts as if fully set forth in Count 20, the allegations of paragraphs 1 through 177.

292)    The actions of DEFENDANTS GUTIERREZ, LEYVA, PEREZ, DOE, J.E. PEREZ, MILLER, CALLEJAS, DIAZ and TORRES with regard to the charges of batteries of law enforcement officers and resisting officers with violence constitute an unlawful arrest/seizure of PLAINTIFF RODRIGUEZ in violation of his Fourth Amendment rights within the meaning of 42 U.S.C. § 1983.

293)    When the actions occurred DEFENDANTS GUTIERREZ, LEYVA, PEREZ, and TORRES were without police and law enforcement powers/authority

294)    With regard to the violations of the constitutional rights of PLAINTIFF RODRIGUEZ as alleged in this count, the actions of DEFENDANTS GUTIERREZ, LEYVA, PEREZ, DOE, J.E. PEREZ, MILLER, CALLEJAS, DIAZ and TORRES were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF RODRIGUEZ and were done with a reckless or callous indifference to the federally protected rights of PLAINTIFF RODRIGUEZ.

295)    As a direct and proximate result of the acts described above, in violation of 42 U.S.C §1983, PLAINTIFF RODRIGUEZ suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

296)    As a further direct and proximate result of the conduct DEFENDANTS GUTIERREZ, LEYVA, PEREZ, DOE, J.E. PEREZ, MILLER, CALLEJAS, DIAZ and TORRES, PLAINTIFF RODRIGUEZ suffered mental anguish, attorney fees, costs of bond and loss of capacity for the enjoyment of life. The losses are either permanent or continuing and PLAINTIFF RODRIGUEZ will suffer the losses in the future, in violation of the civil and constitutional rights of PLAINTIFF RODRIGUEZ.

WHEREFORE, PLAINTIFF RODRIGUEZ prays:

a)      Judgment for compensatory damages in excess of $30,000 dollars against DEFENDANTS GUTIERREZ, LEYVA, PEREZ, DOE, J.E. PEREZ, MILLER, CALLEJAS, DIAZ and TORRES;

b)      Judgment for exemplary damages against DEFENDANTS GUTIERREZ, LEYVA, PEREZ, DOE, J.E. PEREZ, MILLER, CALLEJAS, DIAZ and TORRES;

c)      Costs of suit;

d)      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)      Trial by jury as to issues so triable; and

f)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 21

### NEGLIGENT HIRING AND RETENTION OF GUTIERREZ CLAIM BY PLAINTIFFS RODRIGUEZ AND HUERTA AGAINST TOWN AND DEFENDANT SAID-JINETE IN HER OFFICIAL CAPACITY AS CHIEF OF POLICE (STATE)

For their cause of action against DEFENDANT TOWN in Count 21, PLAINTIFFS RODRIGUEZ and HUERTA state:

297)    PLAINTIFFS RODRIGUEZ and HUERTA reallege and adopt, as if fully set forth in Count 21, the allegations of paragraphs 1 through 177.

298)    At all times material, Defendant TOWN, COUNCIL and CHIEF were responsible for implementing the rules and regulations in regard to hiring, screening, controlling, disciplining, retaining, and assigning police officers to their duties.

299)    At no time, either prior to employment of DEFENDANT GUTIERREZ or his assignment to duties to where it was foreseeable that DEFENDANT GUTIERREZ would be required

to utilize his weapon, utilize force to effectuate an arrest, enter onto private properties to conduct arrests or searches, cause individuals to be arrested, seized, searched, imprisoned, or detained, request other law enforcement officers to arrest, imprison, or detain individuals or otherwise utilize their powers as a law enforcement officer, or request other law enforcement officers to utilize their weapons or law enforcement powers, did the DEFENDANT TOWN, COUNCIL and CHIEF take reasonable steps to ascertain whether DEFENDANT GUTIERREZ was emotionally or intellectually capable of performing such law enforcement duties and did not have a propensity toward violence and the use of excessive force, toward over-reaction to situations he was likely to encounter, toward being intellectually incapable of interpreting the illegality of stopping, detaining, and imprisoning individuals in situations he was likely to encounter or to utilize his authority as a law enforcement officer.

300)    In addition, the DEFENDANT TOWN and CHIEF received actual notice of the dangerous and incompetent propensities of DEFENDANT GUTIERREZ as early as the time he applied for a position as a law enforcement officer with the TOWN when DEFENDANT GUTIERREZ completed an application for employment and a background investigation of DEFENDANT GUTIERREZ was completed.

301)    At no time, either prior to the employment of DEFENDANT GUTIERREZ or his assignment to duties to where it was foreseeable that DEFENDANT GUTIERREZ would be required to:

a)      utilize a weapon;

b)      enter onto private properties to conduct arrests or searches;

c)      cause individuals to be arrested, seized, searched, imprisoned or detained;

d)      use force with regard to individuals to be arrested, seized, searched, imprisoned, or detained, or in regard to individuals who were arrested, seized, searched, imprisoned, or detained;

e)      testify truthfully and accurately, complete reports truthfully and accurately, and respond to questions truthfully and accurately; or

f)      request other law enforcement officers to do any of the actions of a - e.

did the DEFENDANT TOWN, COUNCIL or the CHIEF take reasonable steps to ascertain whether DEFENDANT GUTIERREZ was emotionally or intellectually capable of performing such law enforcement duties and did not have a propensity toward violence and the use of excessive force, toward over-reaction to situations he was likely to encounter, or toward being intellectually incapable of interpreting the legality of stopping, detaining, and imprisoning individuals, conducting searches of people and places, use of force, denying First Amendment rights, and, understanding procedures, policies, and the law in situations he was likely to encounter.

302)    The DEFENDANT TOWN and COUNCIL were negligent in their failure to act upon such notice in that the DEFENDANT TOWN and COUNCIL did not investigate, evaluate and review the background investigation of DEFENDANT GUTIERREZ, abdicated its responsibility to evaluate the credentials of DEFENDANT GUTIERREZ and other applicants to a position of police officer of the DEFENDANT TOWN, and instead the TOWN and COUNCIL deferred to the sole discretion and decision making of the CHIEF of Police.

303)    The DEFENDANT TOWN and COUNCIL also abdicated their responsibility to examine the qualifications of GUTIERREZ and other officer nominees/candidates of the DEPARTMENT with any rank, designation, appointment, promotion, and employment and to determine whether GUTIERREZ and other officer nominees/candidates were fit candidates for

promotion, designation, appointment and employment. Again, contrary to law, DEFENDANT TOWN and COUNCIL deferred to the sole discretion and decision making of the CHIEF of Police

304)    The CHIEF, knowing of the past misconduct of GUTIERREZ, took no scrutiny to review the activities of GUTIERREZ to make sure the prior conduct of GUTIERREZ did not repeat itself. Further, the CHIEF made the affirmative decision to not inform the TOWN COUNCIL

305)    The DEFENDANT TOWN and COUNCIL, and the CHIEF were negligent in the hiring and retention of DEFENDANT GUTIERREZ as a purported police officer of DEFENDANT MEDLEY.

306)    The injuries suffered by PLAINTIFFS HUERTA and RODRIGUEZ were the direct result of the previously described acts, omissions, policies or customs.

307)    As a direct and proximate result of the acts described above, PLAINTIFFS HUERTA and RODRIGUEZ were injured in and about their bodies and extremities, suffered attorney fees, and costs of bond and defense, suffered pain therefrom, incurred medical expenses for the treatment of injuries. The injuries are either permanent or continuing in nature and PLAINTIFFS HUERTA and RODRIGUEZ will suffer the losses and impairment in the future. As a further direct and proximate result, PLAINTIFFS HUERTA and RODRIGUEZ have suffered grievously, have been brought into public scandal and with great humiliation, mental suffering and damaged reputation. As a further direct and proximate result, PLAINTIFFS HUERTA and RODRIGUEZ suffered mental anguish, loss of capacities for the enjoyment of life, and loss of their freedoms.

WHEREFORE, PLAINTIFFS HUERTA and RODRIGUEZ pray against DEFENDANT TOWN:

a)      Judgment for compensatory damages in excess of $30,000.00;

b)      Costs of suit;

c)      Trial by jury as to all issues so triable; and

d)      Such other relief as its Honorable Court may deem just and appropriate.

## COUNT 22

### SECTION 1983 HIRING, RETENTION AND SUPERVISION CLAIM BY PLAINTIFFS RODRIGUEZ AND HUERTA AGAINST TOWN

For their cause of action against DEFENDANT TOWN in Count 22, PLAINTIFFS RODRIGUEZ and HUERTA state:

308)    PLAINTIFFS RODRIGUEZ and HUERTA reallege and adopt, as if fully set forth in Count 22, the allegations of paragraphs 1 through 177 and 298 through 306.


309)    DEFENDANTS TOWN and CHIEF were deliberately indifferent to the risk that a violation of the constitutional rights of the PLAINTIFFS as herein asserted would be committed by DEFENDANT GUTIERREZ as a result of the DEFENDANTS TOWN and CHIEF hiring him and allowing him to remain as a police officer in that the DEFENDANTS TOWN and CHIEF failed to adequately scrutinize the background and performance of DEFENDANT GERMAN GUTIERREZ.

310)    DEFENDANTS TOWN and CHIEF were deliberately indifferent in that they failed to determine whether DEFENDANT GUTIERREZ posed a threat to the public because he was incapable of performing the duties of a police officer and would engage in inappropriate and illegal actions in that capacity.

At no time, either prior to the employment of DEFENDANT GUTIERREZ or his assignment to duties to where it was foreseeable that DEFENDANT GUTIERREZ would be required to:

a)      utilize a weapon;

b)      enter onto private properties to conduct arrests or searches;

c)      cause individuals to be arrested, seized, searched, imprisoned or detained;

d)      use force with regard to individuals to be arrested, seized, searched, imprisoned, or detained, or in regard to individuals who were arrested, seized, searched, imprisoned, or detained;

e)      testify truthfully and accurately, complete reports truthfully and accurately, and respond to questions truthfully and accurately; or

f)      request other law enforcement officers to do any of the actions of a - e.

did the DEFENDANT TOWN, COUNCIL or the CHIEF take reasonable steps to ascertain whether DEFENDANT GUTIERREZ was emotionally or intellectually capable of performing such law enforcement duties and did not have a propensity toward violence and the use of excessive force, toward over-reaction to situations he was likely to encounter, or toward being intellectually incapable of interpreting the legality of stopping, detaining, and imprisoning individuals, conducting searches of people and places, use of force, denying First Amendment rights, and, understanding procedures, policies, and the law in situations he was likely to encounter.

311)    DEFENDANTS TOWN and CHIEF failed to perform the adequate scrutiny of a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire and retain DEFENDANT GUTIERREZ as a law enforcement officer would result in the deprivation of the constitutionally protected rights of third parties like the PLAINTIFFS and that such failure reflected a conscious disregard for the high risk that DEFENDANT GUTIERREZ would transgress the PLAINTIFFS's constitutional rights.

312)    The injuries suffered by PLAINTIFFS HUERTA and RODRIGUEZ were the direct result of the previously described acts, omissions, policies or customs of the DEFENDANTS TOWN and CHIEF.

313)    As a direct and proximate result of the acts described above, in violation of 42 United States Code section 1983, PLAINTIFFS HUERTA and RODRIGUEZ were injured in and about their bodies and extremities, suffered pain therefrom, incurred medical expenses for the treatment of the injuries, suffered physical handicaps. The injuries are either permanent or continuing in nature and PLAINTIFFS will suffer the losses and impairment in the future. As a further direct and proximate result, PLAINTIFFS have suffered grievously, have been brought into public scandal and with great humiliation, mental suffering and damaged reputation. As a further direct and proximate result, PLAINTIFFS have suffered mental anguish, loss of capacities for the enjoyment of life, and loss of their freedoms and civil rights.

WHEREFORE, PLAINTIFFS HUERTA and RODRIGUEZ pray against DEFENDANT TOWN:

a)    Judgment for compensatory damages in excess of $50,000.00;

b)    Costs of suit;

c)    Reasonable attorney's fees;

d)    Trial by jury as to all issues so triable; and

e)    Such other relief as its Honorable Court may deem just and appropriate.

## COUNT 23

### 42 U.S.C. § 1983 VIOLATION OF FOURTH AMENDMENT EXCESSIVE FORCE CLAIM BY PLAINTIFF RODRIGUEZ AGAINST DEFENDANTS GUTIERREZ, LEYVA, TORRES, and PEREZ

For his cause of action against DEFENDANTS GUTIERREZ, LEYVA, TORRES, and PEREZ, individually, in Count 23, PLAINTIFF RODRIGUEZ states:

314)    PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 23, the allegations of paragraphs 1 through 177      .

315)    This cause of action is brought by PLAINTIFF RODRIGUEZ against DEFENDANTS GUTIERREZ, LEYVA, TORRES, and PEREZ for deprivation of constitutional rights within the meaning of 42 U.S.C. § 1983.

316)    While DEFENDANTS GUTIERREZ, LEYVA, TORRES, and PEREZ were acting under the authority of the State of Florida and under color of law as purported police officers in the employ of DEFENDANT TOWN, they subjected PLAINTIFF RODRIGUEZ to the deprivation of the rights and privileges by the Constitution of the United States to be secure in his person against the use of excessive force under the Fourth Amendment within the meaning of 42 U.S.C. § 1983.

317)    All touching of PLAINTIFF RODRIGUEZ by DEFENDANTS GUTIERREZ, LEYVA, TORRES, and PEREZ outside of the DEFENDANT TOWN was excessive because they had no police powers.

318)    With regard to the violations of the constitutional rights of RODRIGUEZ as alleged in this count, the actions of DEFENDANTS GUTIERREZ, LEYVA, TORRES, and PEREZ were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF RODRIGUEZ and were done with a reckless or callous indifference

to the federally protected rights of PLAINTIFF RODRIGUEZ entitling PLAINTIFF RODRIGUEZ to an award of exemplary damages against DEFENDANTS GUTIERREZ, LEYVA, TORRES, and PEREZ in each of their individual capacities.

319)    As a direct and proximate result of the above-mentioned unconstitutional acts of DEFENDANTS GUTIERREZ, LEYVA, TORRES, and PEREZ, PLAINTIFF RODRIGUEZ suffered mental anguish, loss of capacity for the enjoyment of life, physical injury, humiliation personally, and loss of his freedom and civil rights. He suffered grievously, was brought into public scandal with great humiliation, attorney fees, and costs of bond and defense, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation.

WHEREFORE, PLAINTIFF RODRIGUEZ prays:

a)      Judgment for compensatory damages in excess of $30,000 against DEFENDANTS GUTIERREZ, LEYVA, TORRES and PEREZ;

b)      Judgment for exemplary damages against DEFENDANTS GUTIERREZ, LEYVA, TORRES and PEREZ;

c)      Costs of suit;

d)      Reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

e)      Trial by jury as to all issues so triable; and

f)       Such other relief as its Honorable Court may deem just and appropriate.

.

## COUNT 24

## NEGLIGENT FAILURE TO TRAIN CLAIM BY PLAINTIFF RODRIGUEZ AGAINST TOWN AND CHIEF

For his cause of action against DEFENDANTS TOWN and CHIEF, in Count 24, PLAINTIFF RODRIGUEZ states:

320)    PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 24, the allegations of paragraphs 1 through 177

321)    DEFENDANTS TOWN and CHIEF owed a duty of reasonable care to PLAINTIFF RODRIGUEZ in operating its police department to properly instruct and/or direct and/or train and/or supervise DEFENDANTS GUTIERREZ, LEYVA, PEREZ and TORRES.

322)    DEFENDANT TOWN breached that duty.

323)    The above described negligence was the proximate cause of the injuries sustained by PLAINTIFF RODRIGUEZ by the illegal entry onto his property and into the residence, his illegal arrest, his malicious prosecution, the batteries committed on him, and the emotional stress he endures.

324)     As a direct and proximate result PLAINTIFF RODRIGUEZ suffered loss of his freedom, suffered loss of his liberty, mental anguish, and loss of capacity for the enjoyment of life. He endured mental suffering and aggravation of his mental condition. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF and RODRIGUEZ prays against DEFENDANT TOWN:

a)       Judgment for compensatory damages in excess of $30,000.00;

b)       Costs of suit;

     c)     Trial by jury as to all issues so triable; and

     d)     Such other relief as its Honorable Court may deem just and appropriate.

## COUNT 25

## NEGLIGENT FAILURE TO TRAIN CLAIM BY PLAINTIFF RODRIGUEZ AGAINST DADE

For his cause of action against DEFENDANT DADE in Count 25, PLAINTIFF RODRIGUEZ states:

325)    PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 25, the allegations of paragraphs 1 through 177

326)    DEFENDANT DADE owed a duty of reasonable care to PLAINTIFF RODRIGUEZ in operating its police department to properly instruct and/or direct and/or train and/or supervise DEFENDANTS DOE, J.E. PEREZ, MILLER, CALLEJAS, and DIAZ.

327)    DEFENDANT DADE breached that duty.

328)    The above described negligence was the proximate cause of the injuries sustained by PLAINTIFF RODRIGUEZ including his illegal arrest and seizure, his malicious prosecution, the batteries committed on him, and the emotional stress he endures.

329)    As a direct and proximate result, PLAINTIFF RODRIGUEZ suffered cost of bond, physical injury, and loss of his freedom, suffered loss of his liberty, mental anguish, costs of representation and costs of bond and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation. The losses and

damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays against DEFENDANT DADE:

a)   Judgment for compensatory damages in excess of $30,000.00;

b)   Costs of suit;

c)   Trial by jury as to all issues so triable; and

d)   Such other relief as its Honorable Court may deem just and appropriate.

## COUNT 26

## NEGLIGENT FAILURE TO TRAIN CLAIM BY PLAINTIFF HUERTA AGAINST TOWN AND CHIEF

For her cause of action against DEFENDANTS TOWN and CHIEF, in Count 26, PLAINTIFF HUERTA states:

330)   PLAINTIFF HUERTA realleges and adopts, as if fully set forth in Count 26, the allegations of paragraphs 1 through 177.

331)   DEFENDANTS MEDLEY and CHIEF owed a duty of reasonable care to PLAINTIFF HUERTA in operating its police department to properly instruct and/or direct and/or train and/or supervise DEFENDANTS GUTIERREZ, LEYVA and PEREZ.

332)   DEFENDANTS MEDLEY and CHIEF breached that duty.

333)   The above described negligence was the proximate cause of the injuries sustained by PLAINTIFF HUERTA by the illegal entry onto her property and into the residence, the threat she received, and the emotional stress she endures.

334)     As a direct and proximate result PLAINTIFF HUERTA suffered mental anguish, and loss of capacity for the enjoyment of life. She endured mental suffering and aggravation of her mental condition. The losses and damages are either permanent or continuing in nature and PLAINTIFF HUERTA will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF HUERTA prays against DEFENDANT TOWN:

   a)     Judgment for compensatory damages in excess of $30,000.00;

   b)     Costs of suit;

   c)     Trial by jury as to all issues so triable; and

   d)     Such other relief as its Honorable Court may deem just and appropriate.


## COUNT 27

### FAILURE TO TRAIN UNDER 1983 CLAIM BY PLAINTIFF RODRIGUEZ AGAINST TOWN AND SAID-JINETE IN HER OFFICIAL CAPACITY AS CHIEF OF POLICE

For his cause of action against DEFENDANTS TOWN and SAID-JINETE in her official capacity as CHIEF OF POLICE, in Count 27, PLAINTIFF RODRIGUEZ states:

335)     PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 27, the allegations of paragraphs 1 through 177.

336)     PLAINTIFF RODRIGUEZ's rights have been violated under the First, Fourth, and Fourteenth Amendments to the United States Constitution by DEFENDANTS TOWN and CHIEF within the meaning of 42 U.S.C. § 1983..

337)     DEFENDANTS TOWN and CHIEF, as a matter of policy and practice acted with a callous, reckless and deliberate indifference to the rights of PLAINTIFF RODRIGUEZ under the Constitution and the laws of the United States, in that they failed to adequately train and educate the

police officers and purported police officers of the TOWN including DEFENDANTS GUTIERREZ, LEYVA, PEREZ and TORRES and by misinforming them of their authority under the MAA and the processes necessary and required to invoke the MAA in connection with fundamental and recurring constitutional duties and as a result failed to train DEFENDANTS GUTIERREZ, LEYVA, PEREZ and TORRES to properly conduct an investigation, utilize the MAA, and understand the rights of the public.

338)    Such actions by the TOWN and CHIEF encouraged the police officers and purported police officers including DEFENDANTS GUTIERREZ, LEYVA, PEREZ and TORRES to engage in unlawful conduct which caused PLAINTIFF RODRIGUEZ to be subjected to deprivation of his civil rights,

339)    DEFENDANTS TOWN and CHIEF were supervisors and final decision makers, as a matter of policy and practice, have with deliberate indifference caused DEFENDANTS GUTIERREZ, LEYVA, PEREZ and TORRES to engage in unlawful conduct which caused PLAINTIFF RODRIGUEZ to be subjected to deprivation of his civil rights.

340)    By reason of the unlawful seizure and search, detention and arrest, batteries, excessive force, infliction of emotional distress and malicious prosecution of PLAINTIFF RODRIGUEZ, PLAINTIFF RODRIGUEZ suffered loss of liberty, mental anguish, emotional distress, physical pain and injury, legal expenses, cost of bond, humiliation and he was otherwise injured.

341)    As a direct and proximate result PLAINTIFF RODRIGUEZ suffered loss of his freedom, suffered loss of her liberty, mental anguish, and loss of capacity for the enjoyment of life. He endured mental suffering and aggravation of his mental condition. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays against DEFENDANT TOWN and CHIEF:

a)    Judgment for compensatory damages in excess of $30,000.00;

b)    Attorney fees;

c)    Costs of suit;

d)    Trial by jury as to all issues so triable; and

e)    Such other relief as its Honorable Court may deem just and appropriate.

## COUNT 28

### FAILURE TO TRAIN UNDER 1983 CLAIM BY PLAINTIFF HUERTA AGAINST TOWN AND SAID-JINETE IN HER OFFICIAL CAPACITY AS CHIEF OF POLICE

For her cause of action against DEFENDANTS TOWN and CHIEF, in Count 28, PLAINTIFF HUERTA states:

342)    PLAINTIFF HUERTA realleges and adopts, as if fully set forth in Count 28, the allegations of paragraphs 1 through 177.

343)    PLAINTIFF HUERTA's rights have been violated under the First, Fourth, and Fourteenth Amendments to the United States Constitution by DEFENDANTS TOWN and CHIEF within the meaning of 42 U.S.C. § 1983.

344)    DEFENDANTS TOWN and CHIEF, as a matter of policy and practice acted with a callous, reckless and deliberate indifference to the rights of the PLAINTIFF HUERTA under the Constitution and the laws of the United States, in that they failed to adequately train and educate the police officers and purported police officers of the TOWN including DEFENDANTS GUTIERREZ, LEYVA, PEREZ and TORRES and by misinforming them of their authority under the MAA and the processes necessary and required to invoke the MAA in connection with fundamental and recurring constitutional duties and as a result failed to train DEFENDANTS GUTIERREZ, LEYVA, PEREZ

and TORRES to properly conduct an investigation, utilize the MAA, and understand the rights of the public.

345)     Such actions by the TOWN and CHIEF encouraged the police officers and purported police officers including DEFENDANTS GUTIERREZ, LEYVA, PEREZ and TORRES to engage in unlawful conduct which caused PLAINTIFF HUERTA to be subjected to deprivation of her civil rights have with deliberate indifference caused DEFENDANTS GUTIERREZ, LEYVA, PEREZ and TORRES to engage in unlawful conduct which caused HUERTA to be subjected to deprivation of her civil rights.

346)     By reason of the unlawful seizure and search, infliction of emotional distress of PLAINTIFF  HUERTA, PLAINTIFF HUERTA suffered mental anguish, emotional distress, humiliation and she was otherwise injured.

347)     As a direct and proximate result PLAINTIFF HUERTA suffered loss of her privacy,, mental anguish, and loss of capacity for the enjoyment of life. She endured mental suffering and aggravation of her mental condition. The losses and damages are either permanent or continuing in nature and PLAINTIFF HUERTA will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF HUERTA prays against DEFENDANT TOWN and CHIEF:

    a)      Judgment for compensatory damages in excess of $30,000.00;

    b)      Attorney fees;

    c)      Costs of suit;

    d)      Trial by jury as to all issues so triable; and

    e)      Such other relief as its Honorable Court may deem just and appropriate.

## COUNT 29

## FAILURE TO TRAIN CLAIM UNDER 1983 BY PLAINTIFF RODRIGUEZ AGAINST DADE

For his cause of action against DEFENDANT DADE in Count 29, PLAINTIFF RODRIGUEZ states:

348)   PLAINTIFF RODRIGUEZ realleges and adopts, as if fully set forth in Count 29, the allegations of paragraphs 1 through 177.

349)   PLAINTIFF RODRIGUEZ's rights have been violated under the First, Fourth, and Fourteenth Amendments to the United States Constitution by the DEFENDANT DADE.

350)   DEFENDANT DADE, as a matter of policy and practice acted with a callous, reckless and deliberate indifference to the rights of PLAINTIFF RODRIGUEZ under the Constitution and the laws of the United States, in that DADE failed to adequately train and educate the police officers of DADE including DEFENDANTS DOE, J.E. PEREZ, MILLER, CALLEJAS, and DIAZ and by misinforming them of the authority granted under the MAA to other police departments and their officers and the processes necessary and required to invoke the MAA in connection with fundamental and recurring constitutional duties and as a result failed to train DEFENDANTS DOE, J.E. PEREZ, MILLER, CALLEJAS, and DIAZ to properly conduct an investigation whether the MAA was in force and effect and understand the rights of the public.

351)   Such actions by DEFENDANT DADE encouraged the police officers including DEFENDANTS DOE, J.E. PEREZ, MILLER, CALLEJAS, and DIAZ to engage in unlawful conduct which caused PLAINTIFF RODRIGUEZ to be subjected to deprivation of his civil rights,

352)   DEFENDANT DADE was supervisor and final decision maker, as a matter of policy and practice, has with deliberate indifference caused DEFENDANTS DOE, J.E. PEREZ, MILLER,

CALLEJAS, and DIAZ to engage in unlawful conduct which caused PLAINTIFF RODRIGUEZ to be subjected to deprivation of his civil rights.

353)    By reason of the unlawful seizure and search, detention and arrest, batteries, excessive force, infliction of emotional distress and malicious prosecution of PLAINTIFF RODRIGUEZ, PLAINTIFF RODRIGUEZ suffered loss of liberty, mental anguish, emotional distress, physical pain and injury, legal expenses, cost of bond, humiliation and he was otherwise injured.

354)    As a direct and proximate result PLAINTIFF RODRIGUEZ suffered loss of his freedom, suffered loss of his liberty, mental anguish, and loss of capacity for the enjoyment of life. He endured mental suffering and aggravation of her mental condition. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF RODRIGUEZ prays against DEFENDANT DADE:

a)    Judgment for compensatory damages in excess of $30,000.00;

b)    Attorney fees;

c)    Costs of suit;

d)    Trial by jury as to all issues so triable; and

e)    Such other relief as its Honorable Court may deem just and appropriate.

**COUNT 30**

**CONSPIRACY TO COVER UP AND DENY DUE PROCESS UNDER SECTION 1983
CLAIM BY PLAINTIFFS RODRIGUEZ AND HUERTA AGAINST DEFENDANTS
GUTIERREZ, LEYVA, PEREZ, YOUNG, CHARDON, AND SAID-JINETE, IN HER
PERSONAL CAPACITY AND OFFICIAL CAPACITY AS CHIEF**

For their cause of action against DEFENDANTS GUTIERREZ, LEYVA, PEREZ, TOWN, YOUNG,

CHARDON, and SAID-JINETE, in her personal capacity and official capacity as CHIEF, in Count

30, PLAINTIFFS RODRIGUEZ and HUERTA state:

355)    PLAINTIFFS RODRIGUEZ and HUERTA reallege and adopt, as if fully set forth in

Count 30, the allegations of paragraphs 1 through 177.

356)    DEFENDANTS GUTIERREZ, LEYVA, PEREZ, CHARDON, YOUNG, and SAID-

JINETE, in her personal capacity and official capacity as CHIEF ["CONSPIRATORS"] conspired

and colluded together to violate the due process rights of PLAINTIFFS RODRIGUEZ and HUERTA

contrary to the First, Fourth, and Fourteenth Amendments to the Constitution within the meaning of

42 U.S.C. § 1983.

357)    The purpose of the conspiracy was to conceal and cover-up that DEFENDANTS

GUTIERREZ, LEYVA, and PEREZ illegally and unlawfully entered the PROPERTY and residence

of PLAINTIFFS RODRIGUEZ and HUERTA without arrest and search warrants, without lawful

authority and in violation of the Fourth Amendment, unlawfully exercised police powers, including

arrest and search, without lawful authority and outside their jurisdiction, illegally utilized physical

force without lawful authority and acted contrary to the dictates of the MAA and the policies of the

MEDLEY police department, all in violation of the Constitution.

358)     As part of the process of concealing and covering up, the CONSPIRATORS wanted to complete the investigation of the use of force expeditiously so that a Report of the Use of Force exonerating DEFENDANTS GUTIERREZ, LEYVA, and PEREZ could be quickly produced.

359)     To facilitate that purpose, DEFENDANTS GUTIERREZ, LEYVA, and PEREZ prepared reports that intentionally omitted all references that they illegally and unlawfully entered the PROPERTY and residence of PLAINTIFFS RODRIGUEZ and HUERTA without arrest and search warrants, without lawful authority and in violation of the Fourth Amendment, unlawfully exercised police powers, including arrest and search, without lawful authority and outside their jurisdiction, illegally utilized physical force without lawful authority and acted contrary to the dictates of the MAA and the policies of the MEDLEY police department, all in violation of the Constitution as well as other violations as stated and then provided the reports to CHARDON, YOUNG, and SAID-JINETE.

360)     DEFENDANTS CHARDON, YOUNG, and SAID-JINETE served as the "SUPERVISORY REVIEWING AUTHORITY" regarding the use of force by DEFENDANTS GUTIERREZ, LEYVA, and PEREZ. DEFENDANT YOUNG was the reviewing captain. DEFENDANT CHARDON was the reviewing supervisor and lieutenant. DEFENDANT SAID-JINETE was the reviewing CHIEF.

361)     The SUPERVISORY REVIEWING AUTHORITY was the body charged with the responsibility of determining whether the appropriate amount of force was used during the seizure of PLAINTIFF RODRIGUEZ.

362)     In furtherance of the conspiracy DEFENDANTS CHARDON, YOUNG, and SAID-JINETE as the SUPERVISORY REVIEWING AUTHORITY accepted the reports of DEFENDANTS GUTIERREZ, LEYVA, and PEREZ without question and without challenge,

363)    In furtherance of the conspiracy to expeditiously complete the Use of Force Report, the CONSPIRATORS did not properly investigate the use of force by, among other things, relying solely on the reports and statements of its officers, and

a)    Failing to identify, locate, and interview witnesses;

b)    Not determining whether there were independent photographs and video recordings and failing to obtain copies of the photographs and video recordings including failing to take overall photographs of the uninjured areas;

c)    Failing to attempt to communicate and communicating with the subject of the use of force;

d)    Not mandating that photographs be taken of the subject and the scene of the use of force;

e)    Failing of the supervisor to travel to the scene of the incident and requiring the supervisor to;

(A)    Take the officer's and subject's statements of actions;

(B)    Have the injuries sustained and medical treatment needed or desired be documented;

(C)    Identify and interview witnesses;

(D)    Document the scene of the incident;

(E)    Interview the health care providers concerning the injuries sustained and their consistency with reported uses of force;

f)    Failing to fully evaluate the circumstances surrounding the incident; and

g)    Failing to obtaining and evaluate medical records of the subject.

364)   As a result of the actions and in-actions, the SUPERVISORY REPORTING AUTHORITY issued its report that the force used by DEFENDANTS GUTIERREZ, LEYVA, and PEREZ was appropriate. Hence DEFENDANTS GUTIERREZ, LEYVA, and PEREZ were exonerated.

365)   DEFENDANTS CHARDON, YOUNG, and SAID-JINETE, in her personal capacity and official capacity   concealed and obscured facts about the violations committed by DEFENDANTS GUTIERREZ, LEYVA, and PEREZ in an effort to render hollow the right of PLAINTIFFS HUERTA and RODRIGUEZ to seek redress for the constitutional rights abridged and impeded the access to the courts by PLAINTIFFS HUERTA and RODRIGUEZ.

366)   Such actions by the TOWN, SAID-JINETE, YOUNG and CHARDON encouraged the police officers and purported police officers including DEFENDANTS GUTIERREZ, LEYVA, and PEREZ to engage in unlawful conduct which caused PLAINTIFFS RODRIGUEZ and HUERTA to be subjected to deprivation of their civil rights,

367)   DEFENDANTS TOWN and SAID-JINETE were supervisors and final decision makers, as a matter of policy and practice, and acted with deliberate indifference and reckless disregard to the violations of the constitutional rights caused by DEFENDANTS GUTIERREZ, LEYVA, and PEREZ to engage in unlawful conduct which caused PLAINTIFFS HUERTA and RODRIGUEZ to be subjected to deprivation of their civil rights.

368)   As a direct and proximate result PLAINTIFF RODRIGUEZ suffered loss of his freedom, suffered loss of his liberty, mental anguish, and loss of capacity for the enjoyment of life. He endured mental suffering and aggravation of his mental condition. The losses and damages are either permanent or continuing in nature and PLAINTIFF RODRIGUEZ will suffer the losses and damages in the future.

369)     As a direct and proximate result PLAINTIFF HUERTA suffered loss of her freedom, suffered loss of her liberty, mental anguish, and loss of capacity for the enjoyment of life. She endured mental suffering and aggravation of her mental condition. The losses and damages are either permanent or continuing in nature and PLAINTIFF HUERTA will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFFS RODRIGUEZ and HUERTA pray against DEFENDANTS GUTIERREZ, LEYVA, PEREZ, YOUNG, CHARDON, and SAID-JINETE, in her personal capacity and official capacity:

a)     Judgment for compensatory damages in excess of $30,000.00;

b)     Judgment for exemplary damages against DEFENDANTS GUTIERREZ, LEYVA, PEREZ, YOUNG, CHARDON, and SAID-JINETE, in her personal capacity;

c)     Attorney fees;

d)     Costs of suit;

e)     Trial by jury as to all issues so triable; and

f)     Such other relief as its Honorable Court may deem just and appropriate.

GARY KOLLIN, P.A.
COUNSEL FOR PLAINTIFFS HUERTA & RODRIGUEZ
1856 N. Nob Hill Road, Suite 140
Ft. Lauderdale, FL 33322
Telephone:     (954) 723-9999
Fax:              (954) 791-6565
pleadings@garykollinlaw.com


By: /s/ Gary Kollin
Florida Bar No. 282431